CAMBRIDGE RESEARCH AND DEVELOPMENT GROUP, KENNETH N. SHERMAN, TAX MATTERS PARTNER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3435-88.     Filed September 5, 1991.

*Geoffrey J. O'Connor,* for the petitioner.
*Joseph F. Long,* for the respondent.

OPINION

HALPERN, *Judge:*\* In T.C. Memo. 1989-679 (Cambridge I), we denied petitioner's motion to dismiss for lack of jurisdiction on the grounds that petitioner's claim with regard to the statute of limitations did not present a jurisdictional issue but, rather, raised a defense in bar. Subsequently, the parties jointly moved that petitioner's defense in bar be separated from any other issues and submitted without trial for decision. We granted those motions. Accordingly, the issue before us concerns the period of limitations for making assessments of tax. In particular, it concerns whether an agreement to extend the period of limitations with respect to all of the partners of a partnership is effective when entered into on behalf of the partnership by a general partner, not the tax matters partner, under the circumstances here existing. Respondent has determined adjustments with regard to the partnership's 1983 taxable year.

*Background*

In Cambridge I, we made findings of fact. Those findings of fact are incorporated herein by this reference and are repeated only as pertinent to the present discussion. In addition, the parties have stipulated as part of this proceeding to the contents of that agreement of limited partnership under which Cambridge Research & Development Group (Cambridge) was organized and has been operated. Accordingly, the contents of that partnership agreement (the partnership agreement) are found and, by this reference, are incorporated herein.

Cambridge was organized under the laws of the State of Connecticut. At the time the petition in this case was filed, its principal place of business was Westport, Connecticut.

Cambridge is in the business of developing and licensing inventions. From its organization in September 1966

---

\*By order of the Chief Judge, this case was reassigned and submitted to Judge James S. Halpern for disposition.

through September 1984, the only general partners of Cambridge were Lawrence M. Sherman (Lawrence) and his twin brother, petitioner herein, Kenneth N. Sherman (sometimes referred to as Kenneth). There have always been numerous limited partners of Cambridge. On October 1, 1984, Kenneth resigned as a general partner and converted his interest in the partnership to that of a limited partner. Lawrence has at all times relevant hereto remained a general partner.

Cambridge filed a partnership tax return for 1983, which was signed by Lawrence. The return contains no space for designating a tax matters partner nor was a tax matters partner designated in any statement attached to the return or otherwise filed with the Internal Revenue Service. Schedule K-1 to that return states that Kenneth and Lawrence had equal interests in partnership profits at year's end.

The partnership agreement has been amended on numerous occasions. At all times relevant to this proceeding, however, it has provided the following with regard to the powers of the general partners:

11. POWERS AND ACTIVITIES OF GENERAL PARTNERS:

(a) The General Partners shall manage and conduct the Partnership business. They may, for the furtherance of the business of the Partnership, borrow or lend money and pledge, mortgage, sell, assign, license or otherwise dispose of any or all of the Partnership property *and in general take any action or do anything in furtherance of the Partnership business.* [Emphasis added.]

Although the purpose for which Cambridge was formed is set forth in the partnership agreement, the term "Partnership business" is not further defined. The partnership agreement grants the following power of attorney:

22. POWER OF ATTORNEY: (a) Each of the Limited Partner's [sic] signatory hereto irrevocably constitutes and appoints the General Partners, or any one of them, his true and lawful attorney, in his name, place, and stead, to make, execute, acknowledge and file:

\*      \*      \*      \*      \*      \*      \*

(ii) Any other instrument which may be required to be filed by the Partnership, or which the General Partners shall deem it advisable to file; and

\*      \*      \*      \*      \*      \*      \*

(it being expressly understood and intended by each of the Limited Partners that the foregoing power of attorney is coupled with an interest)

The partnership agreement requires all partners to be signatories thereto.

Respondent examined Cambridge's 1983 return and, in March 1985, issued a report of examination changes. The partnership protested in a letter to respondent that referred to Lawrence as the tax matters partner and that was signed by him as such.

In September 1986, respondent requested of Cambridge consent to extend the time for assessing against its partners any tax attributable to partnership items for the partnership's 1982 and 1983 taxable years. Respondent made the request by forwarding to Mr. O'Connor (the partnership's attorney) a Form 872-O, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership (the consent). The consent was executed by Lawrence on September 16, 1986, and returned to respondent, on whose behalf it was executed on September 18, 1986. The consent contains alternative signature lines for consent on behalf of a partnership. The first line states: "TAX MATTERS PARTNER SIGNATURE HERE." The second line states: "AUTHORIZED REPRESENTATIVE SIGN HERE." Instructions printed under the signature lines state, in relevant part:

The Tax Matters Partner of the partnership in which the item arose (or any person authorized by the partnership in writing) may consent to extend the period of limitations for all partners.

If the person signing this consent is not the Tax Matters Partner, sign in the space entitled "Authorized Representative Sign Here" and attach a copy of the written authorization from the partnership.

Lawrence signed the consent on the line provided for the signature of the tax matters partner.

Subsequently, in either late 1987 or early 1988, respondent completed his examination of Cambridge for 1983 and issued a notice of final partnership administrative adjustment (FPAA).[1] Such notice generally is a prerequisite to any

---

[1] Copies of the FPAA for 1983 were sent to all Cambridge partners, including Kenneth and Lawrence, on Dec. 15, 1987. Immediately thereafter, Lawrence notified respondent that no

assessment by respondent of a deficiency attributable to partnership items. The FPAA also serves as a ticket of admission to the Tax Court, so that the partners can challenge the adjustment without first having to pay the tax.

The FPAA was issued after the expiration of the applicable period of limitations for assessment unless the consent was effective to extend the 3-year period for assessments normally applicable to taxes attributable to partnership items, or the partnership otherwise is estopped from claiming the benefit of such period. Petitioner argues that the consent was ineffective and therefore the FPAA was untimely. The consent was ineffective, argues petitioner, because Lawrence had no authority to sign it on behalf of the partnership. The question we must decide is whether Lawrence did have such authority.

## Discussion

For the reasons discussed below, we hold that the consent was effective to extend the period for assessing against the partners of Cambridge taxes attributable to partnership items (or affected items) of the partnership for its 1983 taxable year. Since we so hold, we need not (and do not) consider estoppel or other affirmative defenses raised by respondent.

### I. *Period for Assessing Tax*

The general rule limiting the period during which a tax may be assessed provides that any assessment must be made within 3 years after the return for such tax is filed. Sec. 6501(a).[2] A taxpayer may consent in writing to an additional period during which assessment may be made.

notice addressed to the tax matters partner had been received by Cambridge. A January 1988 notice states that it was reissued Jan. 5, 1988. Respondent's certified mailing list notes that this second notice was mailed to "Tax Matters Partner, Cambridge Research and Development Group" on Jan. 21, 1988. Whether Dec. 15, 1987, or a date in January 1988 is the proper issuance date of the notice is immaterial for purposes of addressing the period of limitations issue here under consideration. In either case, the period of limitations had, absent a valid extension, expired prior to issuance. For convenience, however, we will refer to January 1988 as the time of issuance. The petition herein is timely no matter which of the two dates is considered.

[2]Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

See sec. 6501(c)(4). The general rule of section 6501(a) does not apply, however, to income tax attributable to partnership items. Sec. 6501(o)(2), formerly sec. 6501(n)(2). The period for assessing any income tax attributable to partnership items (or affected items) for a partnership taxable year will not expire before 3 years after the partnership files its information return for the taxable year in question. Sec. 6229(a). That period may be extended by agreement at any time during the initial 3-year period following the partnership's filing of its return. Sec. 6229(b)(1). A partner individually may enter into an extension agreement with the Secretary. Sec. 6229(b)(1)(A). The period may be extended with respect to all partners by an agreement entered into by the Secretary and, either, the tax matters partner or "any other person authorized by the partnership in writing to enter into such an agreement." Sec. 6229(b)(1)(B).

II. *Lawrence's Authority to Enter Into a Consent Agreement With Respect to All the Partners of Cambridge*

The consent, executed by Lawrence, was effective with respect to all partners of Cambridge only if, when he executed the consent, Lawrence either was tax matters partner or had been authorized in writing by the partnership to enter into such an agreement. We hold that Lawrence was not the tax matters partner of Cambridge for 1983, but that he did have authority as required by section 6229(b)(1)(B) to extend the period of limitations.

A. *Tax Matters Partner*

The term "tax matters partner" is defined by a series of rules set forth in section 6231(a)(7). Under the first of those rules, the tax matters partner is the general partner designated as such by the partnership (such designation to be made as provided in regulations). Sec. 6231(a)(7)(A). No such designation here was made. In default of such designation, the tax matters partner is the general partner having the largest profits interest in the partnership at the close of the taxable year involved. Sec. 6231(a)(7)(B). In the case of a tie, the tie is broken by looking to that general partner whose name comes first alphabetically. *Id.* Alternately, if the Secretary determines that it is impracticable to look to

the general partner having the largest profits interest, he may select a partner to serve as tax matters partner. Sec. 6231(a)(7). Regulations of some intricacy interpret and apply those rules. See sec. 301.6231(a)(7)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6791 (Mar. 5, 1987).

Under the tie-breaking rule, the tax matters partner here would be brother Kenneth. Kenneth and Lawrence were the only general partners at the close of 1983, and each had an identical interest in profits, but Kenneth preceded Lawrence in an alphabetical listing of general partners. Thus, Kenneth is the tax matters partner (and Lawrence is not) unless the Secretary determined that the selection of Kenneth under the first default rule is impracticable and the Secretary selected Lawrence instead. The statute is silent on what constitutes impracticability and on how a selection by the Secretary is to be made. The Secretary has neither issued nor proposed any pertinent regulations. But cf. Rev. Proc. 88-16, 1988-1 C.B. 691 (setting forth certain situations (including termination of a designation, incarceration, inability to locate, or inability to determine from Schedule K-1) where respondent may deem it impracticable to apply the largest profits interest rule.) We have dealt with this problem on occasion. *Amesbury Apartments, Ltd. v. Commissioner,* 95 T.C. 227, 233 (1990); *Sierra Design Research & Development Ltd. Partnership v. Commissioner,* T.C. Memo. 1989-506; *PAE Enterprises v. Commissioner,* T.C. Memo. 1988-222.

Here, it is apparent that the Secretary made no determination of impracticability and did not select Lawrence as tax matters partner. Prior to the commencement of respondent's examination of Cambridge, there was no need for respondent to identify the tax matters partner (Lawrence had the authority as a general partner to sign the partnership's 1983 return). During the course of the examination (and in particular with regard to execution of the consent), respondent's agents accepted Lawrence as tax matters partner, based, no doubt, on his representations that he was such. Nevertheless, nothing in respondent's conduct leads us to conclude that he determined that it was impracticable for Kenneth to serve as tax matters partner. Indeed, nothing suggests that it was impracticable for Kenneth so

to serve. Kenneth was not dead or in any way incapacitated; he was in California, and he did assert his status as tax matters partner when it came time to file the petition in this case. Respondent addressed the notice of final partnership administrative adjustment to "Tax Matters Partner," not to Lawrence as tax matters partner. The majority of other documentary communications from respondent to Cambridge was similarly addressed. Finally, respondent's trial counsel, in a letter to petitioner's counsel, conceded that the statutory and regulatory procedures for designating or selecting a tax matters partner had not been "strictly complied with." Given the facts before us, we can reach no conclusion other than that Kenneth was tax matters partner of Cambridge for 1982 and 1983 at the time Lawrence executed the consent and so remains.[3]

B. *Other Person Authorized in Writing by the Partnership*

Since Lawrence was not tax matters partner, the consent signed by him is effective only if he was authorized in writing by the partnership to enter such an agreement on behalf of all the partners. Sec. 6229(b)(1)(B).

1. *The Temporary Regulations*

Procedures for a partnership to authorize a person other than the tax matters partner to enter into an agreement extending the period of limitations are set forth in temporary regulations. Section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987), provides as follows:

---

[3]Such a determination settles any question that we lack jurisdiction for want of a timely filed petition. Although respondent has not challenged petitioner's assertion that he is the tax matters partner, empowered to make the petition herein, if we had determined that Lawrence had been selected by the Secretary as tax matters partner, then, indeed, our jurisdiction would be in doubt. See *Sierra Design Research & Development Ltd. Partnership v. Commissioner,* T.C. Memo. 1989-506 (a partnership action is not commenced by a petition filed within the 90-day period specified in sec. 6226(a)(1) if filed by a person that is not the tax matters partner). In *Cambridge Research & Development Group v. Commissioner,* T.C. Memo. 1989-679 (Cambridge I), neither we nor respondent questioned Kenneth's representation that he was the tax matters partner. We stated only: "Petitioner received a valid FPAA as required by section 6223 and filed a timely petition as required by section 6226. Consequently, this Court has jurisdiction to decide petitioner's claim." Cambridge I, *supra,* 58 T.C.M. 1053, 1054, 58 P-H Memo T.C. par. 89,679 at 3500. Based on our determination that Lawrence was not selected by the Secretary as tax matters partner, we hereby reaffirm our conclusion in Cambridge I as to jurisdiction.

Extension by agreement.—Any partnership *may* authorize any person to extend the period described in section 6229(a) with respect to all partners by filing a statement to that effect with the service center with which the partnership return is filed. The statement shall—

(a) Provide that it is an authorization for a person other than the tax matters partner to extend the assessment period with respect to all partners,

(b) Identify the partnership and the person being authorized by name, address, and taxpayer identification number,

(c) Specify the partnership taxable year or years for which the authorization is effective, and

(d) Be signed by all persons who were general partners at any time during the year or years for which the authorization is effective.

[Emphasis added.]

There is no question but that the specific procedures of section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra,* have not here been met. Noncompliance with that regulation, however, cannot invalidate authority to extend the period of assessment granted by a partnership prior to promulgation of the regulation. *Amesbury Apartments, Ltd. v. Commissioner,* 95 T.C. at 242. Lawrence executed the consent in September 1986. Section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra,* was adopted on March 2, 1987. See T.D. 8128, 52 Fed. Reg. 6789 (Mar. 5, 1987). Thus, if Lawrence had the requisite authority to execute the consent, noncompliance with the temporary regulations would not invalidate that authority (nor the consent). Moreover, as we said in *Amesbury Apartments, Ltd.,* the use of the verbal auxiliary "may," rather than "shall," in the first sentence of section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra,* establishes that the procedures specified in the regulation are permissive and not mandatory. 95 T.C. at 242-243. Thus, we must determine whether, under the language of section 6229(b)(1)(B), Lawrence had authority in writing to extend the period for assessment with respect to all of the partners of Cambridge.

### 2. *An Agent of the Partnership and Its Partners*

Lawrence has been a general partner of Cambridge at all times here relevant. The grounds for, and extent of, his

authority as a general partner are determined under Connecticut law.

a. *Under the Connecticut Statute*

Connecticut has adopted both the Uniform Partnership Act and the Revised Uniform Limited Partnership Act. See, respectively, Connecticut Uniform Partnership Act, Conn. Gen. Stat. Ann. secs. 34-39 to 34-81 (West 1987); Connecticut Uniform Limited Partnership Act, Conn. Gen. Stat. Ann. secs. 34-9 to 34-38q (West 1987). Thus, except as otherwise provided by law or in the partnership agreement, a general partner of a Connecticut limited partnership has the same rights and powers, and is subject to the same restrictions, as a partner in a general partnership. Conn. Gen. Stat. Ann. sec. 34-17 (West 1987). A Connecticut general partner is an agent of the partnership for the purpose of its business. Conn. Gen. Stat. Ann. sec. 34-47(1) (West 1987).

There is some question whether, under section 9(1) of the Uniform Partnership Act, upon which section 34-47(1), Conn. Gen. Stat. Ann. (West 1987), is based, a general partner performing an act within the scope of his authority acts as an agent of his copartners or as an agent of the partnership. The Uniform Partnership Act appears to adopt the entity view of the partnership in that respect. 1 A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership sec. 4.01(b), pp. 4:3-4:4 (1988); see also 2 A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership, appendix A, Prefatory Note to Uniform Partnership Act (1990 Draft) 70-71 (Supp. 1990).

b. *Pursuant to the Partnership Agreement*

The partnership agreement does not restrict the scope of the agency granted to Lawrence by the Connecticut partnership statute; indeed, it provides what appears to be an independent grant of agency of equal extent from the partners, as principals, to Lawrence. Section 11(a) of the partnership agreement provides that the general partners are authorized to "take any action or do anything in furtherance of the Partnership business."

### 3. *Extent of That Agency*

#### a. *Not an Extraordinary Act*

Petitioner argues that execution of the consent is an extraordinary act, beyond the authority normally extended to a general partner. We disagree. While it is true that the question before us involves the tax liability of the partners of Cambridge, rather than any tax liability of that partnership per se, we cannot conclude that Lawrence's action in entering into an agreement with the Secretary to extend the period for making assessments with respect to the partners of Cambridge exceeded the extent of the agencies conferred on him by both the Connecticut Uniform Partnership and Uniform Limited Partnership Acts (Conn. Gen. Stat. Ann. secs. 34-17(a), 34-47(1)) and section 11(a) of the partnership agreement. There is no Connecticut case on point, so we must determine that question as if we were sitting as the highest court of the State. See *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). We believe that that is how the Supreme Court of Connecticut would hold. We do so for the following reasons.

#### b. *Amesbury Apartments, Ltd. v. Commissioner*

In *Amesbury Apartments, Ltd. v. Commissioner, supra,* we considered whether the requirements of section 6229(b)(1)(B) were satisfied when the agreement in question was executed by an accountant pursuant to his authority as attorney in fact for the partnership. We held that a general partner (not the tax matters partner) having the authority to do so may extend to an agent of the partnership (viz, its attorney in fact) authority to extend the section 6229(a) period with respect to all partners. *Amesbury Apartments, Ltd. v. Commissioner,* 95 T.C. at 242-243. An implicit conclusion to be drawn from *Amesbury Apartments, Ltd.* is that the general partner there, although not the tax matters partner, had authority to delegate the power to execute consents to extend the period of limitations on behalf of all partners.[4] Put another way, we in effect concluded that, for

---

[4] The parties did not argue the State law question of whether the general partner had the requisite authority; they focused instead on whether an agent not specifically authorized to enter into a sec. 6229(b)(1)(B) agreement can, by doing so, bind the partners.

Federal income tax purposes, the general partner there, as an agent extending authority to a subagent, himself had the authority that he extended (i.e., the authority to extend the section 6229(a) period with respect to all partners). Nothing in *Amesbury Apartments, Ltd.* indicates either that the general partner there had any extraordinary power beyond that conveyed by statute or that such statutory power was limited by any provision of the partnership agreement. *Amesbury Apartments, Ltd.* involved an Alabama limited partnership. Like Connecticut, Alabama has adopted both the Uniform Partnership Act and the Revised Uniform Limited Partnership Act, and the provisions in both States specifying the agency of a general partner are identical. See Ala. Code secs. 10-9A-62, 10-8-49A (1977). We see no reason to reach any different conclusion with regard to the scope of the statutory agency of a general partner here, under Connecticut law than, by inference, we have already reached under Alabama law.

### c. *Within the Scope of the Partnership Business*

Moreover, section 6229(b)(1)(B) makes extension of the period of assessment with respect to all partners a concern of the partnership (unless individual extensions are entered into, such extension can be obtained *only* by an agreement entered into with the tax matters partner or another person *authorized by the partnership*). In enacting the unified partnership audit provisions that appear in subchapter C, chapter 63, subtitle A of the Code (secs. 6221-6233), Congress mandated that the tax treatment of most items of partnership income, deduction, gain, loss, and the like be determined at the partnership level. Sec. 6221. Congress contemplated a "unified partnership proceeding," rather than separate proceedings with each partner. H. Rept. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 662. Certain obligations are imposed on a statutorily defined "tax matters partner." Sec. 6231(a)(7). It is an inescapable conclusion that Congress made at least certain aspects of the determination of the tax liability of a partner in a partnership subject to the unified partnership audit and litigation provisions the business of the partnership. Accordingly, we are comfortable with our conclusion that, in extending the

section 6229(a) period with regard to all partners, Lawrence was undertaking partnership business and, thus, acting within the scope of his agencies (as conferred either by the Connecticut Uniform Limited Partnership Act or section 11(a) of the partnership agreement). See Conn. Gen. Stat. Ann. secs. 34-17(a), 34-47(1) (as to the former).

### 4. *Attorney in Fact for Limited Partners*

Under the partnership agreement, Lawrence, as a general partner, was authorized as attorney in fact for each of the limited partners of Cambridge by section 22(a) of the partnership agreement to, among other things, execute and file any instrument required to be filed by the partnership or which, as general partner, he deemed it advisable to file. Thus, independent of the agencies on behalf of the partnership and the partners that he enjoyed under the Connecticut Uniform Limited Partnership Act and section 11(a) of the partnership agreement, respectively, Lawrence had the specific power of attorney described, on behalf of the limited partners. [5]

### 5. *A Distinction in Principal*

We have distinguished among Lawrence's agency on behalf of the partnership (under the Connecticut Uniform Limited Partnership Act) and his agencies on behalf of the limited partners (under sections 11(a) and 22(a) of the partnership agreement). We have concluded, however, that Lawrence had sufficient authority under each to execute the consent. Nevertheless, the distinction as to principal between the first agency (the partnership as principal) and the second two agencies (the partners as principals) may be important for purposes of section 6229(b)(1)(B), given the requirement there set forth of a written authorization "by the partnership."

As previously discussed, an implicit conclusion to be drawn from *Amesbury Apartments, Ltd. v. Commissioner, supra,* is that under the Alabama Uniform Limited Partner-

---

[5]Normally, such an agency is established so that a general partner is empowered, as attorney in fact, to act on behalf of other partners where, either directly or by agent, they must act themselves, e.g., in executing the certificate of limited partnership. See, e.g., Conn. Gen. Stat. Ann. sec. 34-10(a) (West Supp. 1990) (execution of certificate of limited partnership). The agency was here not so limited.

ship Act a general partner had sufficient authority to extend the section 6229(a) period with regard to all partners. Thus, *Amesbury Apartments, Ltd.* could be read for the proposition that the partnership (an entity), acting through a general partner, is the proper source of the authority to enter into a section 6229(b)(1)(B) agreement. See also *Barbados # 7 Ltd. v. Commissioner,* 92 T.C. 804, 812-813 (1989) (following dissolution of the partnership on bankruptcy, general partner no longer had authority to act for the partnership and enter into section 6229(b)(1)(B) agreement). The temporary regulations support a somewhat different proposition. See sec. 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra.* The insistence in those regulations that the written authorization be signed "by all persons who were general partners at any time during the year or years for which the authorization is effective" suggests a concern beyond the concern that, as a matter of agency law, the partnership (as principal) effectively has acted and is bound. It may well be that the concern is that the partners (in their individual capacities) consented to an extension of the period for assessment. Such a concern would not be unreasonable since, indeed, it is with regard to the partners that the period for assessment is being extended. Such an interpretation is not out of harmony with the structure of subchapter C, although there is nothing in either the statute or the report of the conference committee (the only relevant committee report) directly to support it. See H. Rept. 97-760, *supra.* Bearing in mind that, previously, we have held the requirements of the temporary regulations to be permissive and not mandatory, we today hold that an authorization by the partners will be a sufficient authorization for purposes of section 6229(b)(1)(B).

## 6. *Specificity of the Authorization*

Citing the provisions of the temporary regulation, petitioner nevertheless argues that the authorization referred to in section 6229(b)(1)(B) must be specific. Nothing in section 6229(b) or the legislative history of subchapter C suggests a requirement that the necessary writing authorizing a person other than the tax matters partner to extend the period for assessment is limited to one specifically referring to a

consent agreement under section 6229(b)(1)(B). While such a specific authorization clearly would meet the requirements of section 6229(b)(1)(B), specificity is not required by the statute. See *Amesbury Apartments, Ltd. v. Commissioner,* 95 T.C. at 242-243 (authority to "perform any and all acts * * * with respect to the above specified tax matters" was sufficient).

### 7. *The Necessary Writing*

In *Barbados # 7 Ltd. v. Commissioner, supra,* we assumed for purposes of that opinion, without deciding, that the sole general partner there need not have authorized itself in writing in order to satisfy the requirements of section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra. Barbados # 7 Ltd. v. Commissioner,* 92 T.C. at 812 n.3. That assumption suggests that the writing expressing authorization must run from the partnership (as an entity) to its agent in order to satisfy the terms of section 6229(b)(1)(B). Our opinion in *Amesbury Apartments, Ltd.,* discussed above, confirms that written authorization from the partnership (through its general partner agent) to the executing agent satisfies the statute's requirement of a writing. Nevertheless, since we hold today that authority running from the partners is sufficient to satisfy the statute's authorization requirement, we may look to either source (partnership or partners) and inquire as to the necessary writing.

Here, as apparently was the case in *Barbados # 7 Ltd. v. Commissioner, supra,* we have no writing (other than the Connecticut Uniform Limited Partnership Act) expressing authority derived from the partnership (as an entity) for its agent to enter into an agreement extending the period to assess tax with regard to partners. However, in this case, there is a writing, the partnership agreement, expressing authority derived from the *partners* to enter into such an agreement. Since (as we today hold) authority derived from the partners is sufficient to satisfy the requirement of section 6229(b)(1)(B) for authorization by the partnership, it follows that the requisite writing may be the writing expressing that authority, i.e., the partnership agreement. Since the requisite written authorization exists in the

partnership agreement, we need not decide whether, lacking such a writing, a general partner need manifest to himself in writing his authority to enter into a section 6229(b)(1)(B) agreement or whether a State partnership statute alone may constitute the requisite written authorization.

## III. *Conclusion*

For all the reasons stated above, we hold that Lawrence, as general partner, was a person other than the tax matters partner who was authorized in writing by the partnership to enter into the consent. The consent executed by Lawrence was valid and the requirements of section 6229(b)(1)(B) have been satisfied. We think it of no moment that Lawrence executed the consent on the line designated for the signature of the tax matters partner. See *Three G Trading Corp. v. Commissioner,* T.C. Memo. 1988-131 (consent for liquidated corporation signed by former corporate president on line for individual taxpayers, rather than on line for corporate representatives, was valid; consent need not be executed perfectly).

*An appropriate order will be issued.*