BUGABOO TIMBER CO., GERTRUDE J. MORGAN, TAX MATTERS PERSON, AND VERNON R. MORGAN, ALLEGED TO BE ITS TAX MATTERS PERSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DAVIDSON INDUSTRIES, INC., F.D. CROWELL, TAX MATTERS PERSON, AND D.L. DAVIDSON, ALLEGED TO BE ITS TAX MATTERS PERSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13786–90, 22353–90.     Filed November 22, 1993.

*Charles P. Duffy, Philip N. Jones,* and *Peter J. Duffy,* for petitioners.

*Cheryl B. Harris,* for respondent.

FAY, *Judge*: These cases were consolidated solely for purposes of our consideration of the procedural issue whether Forms 872-S, Consents to Extend the Time to Assess Tax Attributable to Items of an S Corporation, were signed by the tax matters person (TMP)[1] of each entity or a person with written authorization to sign so that the period of limitations for assessment is open.

All section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless indicated otherwise.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by reference.

Bugaboo Timber Co. (Bugaboo) and Davidson Industries, Inc. (Industries),[2] were S corporations with their respective principal places of business located in Oregon on the date the petitions were filed.

### *Bugaboo*

Bugaboo was incorporated in 1959 and elected to be treated as an S corporation in 1983. Bugaboo used a fiscal year ending October 31. Throughout the fiscal year 1985, 25 percent of the stock of Bugaboo was owned by each of (1) Gertrude J. Morgan and (2) Vernon R. Morgan (husband and wife), and (3) FloRetta J. Young and (4) Robert C. Young (husband and wife). During the fiscal year 1985, the shareholders who were officers and directors of Bugaboo were:

| | |
|---|---|
| President and director | Mr. Young |
| Vice president and director | Mrs. Morgan |
| Secretary-treasurer and director | Mr. Morgan |

---

[1] The term "tax matters person" is used as the counterpart of the term "tax matters partner", as defined in sec. 6231(a)(7), used in the so-called TEFRA partnership provisions, secs. 6221 through 6231 added to the Code by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, which are applicable to S corporations. Sec. 6244.

[2] The major adjustments in the notices of final S corporation administrative adjustment (FSAA) (1) for Bugaboo increase ordinary income reported by $3,682,458 and (2) for Industries increase ordinary income reported by $1,385,749, $903,358, and $178,182, for the respective years in issue.

Mr. Morgan, as secretary-treasurer since 1962, ran the day-to-day operations in the office of Bugaboo, and Mr. Young worked the equipment in the field. Mrs. Morgan and Mrs. Young had only minimal involvement in Bugaboo.

The bylaws of Bugaboo, as approved in 1959, provide that the secretary-treasurer shall "sign all stock certificates and other documents issued by [Bugaboo]", keep "an accurate system of accounting", and "perform other duties as may be required of him by the directors." The minutes of a March 3, 1964, special meeting of the directors of Bugaboo state as follows:

> Motion was made, seconded and unanimously passed that the following Resolution be passed:
>
> RESOLVED that Vernon R. Morgan, as Secretary-Treasurer * * * is empowered * * * to make any contracts * * * in the corporate name; to pay debts, to sue upon, defend, compromise or adjust any controversies involving rights, both personal and property, and to act in any complaints, proceedings or suits with all powers; to appear and vote for the Corporation at any corporate or other meetings, and to make, do and transact all and every kind of business of whatsoever nature or kine [sic] * * *. He is authorized to execute and acknowledge any and all instruments necessary or proper to carry out the foregoing powers.
>
> Whether or not enumerated, Vernon R. Morgan, as Secretary-Treasurer of the Corporation, shall have full power and authority to do and perform all and every act and thing he deems desirable for the benefit of the Corporation.
>
> This authority as granted requires no further action of the Board of Directors in reviewing or authorizing Vernon R. Morgan, its Secretary-Treasurer, to so act.

Mr. Morgan does not have an accounting background but was in charge of tax matters for Bugaboo with the help of its outside C.P.A., Thomas G. Windedahl. The Form 1120S, U.S. Income Tax Return for an S Corporation, for Bugaboo for the fiscal year 1985, filed in January 1986, was signed by Mr. Morgan as secretary-treasurer. The Schedules K-1 attached to the return reflected the names of the shareholders and that each owned 25 percent of the stock and had an equal share of income. The return did not require, or include, a designation of a TMP for Bugaboo.

Thomas G. Windedahl, who had prepared the financial statements and returns of Bugaboo since about 1974, testified that, at some point, the Internal Revenue Service reve-

nue agent who conducted the examination advised him that a consent to extend the period of limitations for the fiscal year 1985 was needed. By letter dated October 19, 1988, addressed to Mr. Morgan as TMP for Bugaboo, the agent stated:

> Enclosed is a Form 872-S, Consent to Extend the Time to Assess Tax Attributable to Items of an S Corporation, for Bugaboo Timber Co.'s tax year ended October 31, 1985.
>
> * * * Bugaboo Timber is a TEFRA entity and the consent form requires the signature of the "Tax Matters Person". * * * In the case of Bugaboo Timber Co. all of the shareholder interests are the same. Therefore, it is necessary to determine the "Tax Matters Person" by looking at an alphabetical listing of the shareholders. Again that would make you the "Tax Matters Person".
>
> I would appreciate your consideration for signing the enclosed Form 872-S and returning it to me within the next two weeks if at all possible.

The Form 872-S, which provided that the limitations period be extended through December 31, 1989, was signed by Mr. Morgan on the line designated for TMP and by a group manager for the Internal Revenue Service and dated December 13, 1988. Copies of the executed Form 872-S were sent by letters to: (1) Thomas G. Windedahl; (2) one of the attorneys for Bugaboo; and (3) Mr. Morgan addressed as TMP of Bugaboo.

Mr. Morgan executed a Form 2848, Power of Attorney and Declaration of Representative, for Bugaboo relating to the fiscal year 1985 without reference to his title or office on December 13, 1988.

A letter dated February 7, 1989, addressed to Mr. Morgan as TMP for Bugaboo from the revenue agent forwarded engineering and valuation reports relating to Bugaboo. A letter dated March 10, 1989, addressed to Mr. Morgan as TMP for Bugaboo from the Portland, Oregon, District Director stated that the Internal Revenue Service was beginning an examination of Bugaboo for the fiscal year 1985.

In September 1989, a second Form 872-S, which provided that the limitations period be extended for the fiscal year 1985 to June 4, 1990, was signed by Mr. Morgan on the line designated for TMP and by an acting group manager for the Internal Revenue Service. The second Form 872-S was forwarded by September 11, 1989, letter addressed to Mr. Morgan, TMP of Bugaboo, from the revenue agent. Copies of the

executed second Form 872-S were apparently forwarded to: (1) Thomas G. Windedahl; (2) the attorney for Bugaboo; and (3) Mr. Morgan addressed as TMP for Bugaboo.

Thomas G. Windedahl testified that he told Mr. Morgan which line to sign on the Forms 872-S. He testified also that he was aware of a space to designate the TMP beginning with the 1987 returns but did not designate the TMP for his partnership or S corporation clients and was not sure he "ever looked up in the directions to what a tax matters person was." Mr. Morgan testified that he did not focus on the term TMP in the consents, other documents, and correspondence.

A summary report of the examination was sent by October 10, 1989, letter addressed to Mr. Morgan as TMP for Bugaboo by the District Director. Mr. Morgan signed as TMP a waiver of the closing conference with the Internal Revenue Service, which was prepared by the revenue agent.

No consent to extend the period of limitations for Bugaboo for the fiscal year 1985 was solicited from or executed by anyone other than Mr. Morgan. Mr. Morgan did not understand the meaning of, or notice, the term TMP, but presumed that the other shareholders would agree to his signing the consents. Although Mr. Morgan did not specifically remember telling the other shareholders about signing the consents, he testified that he might have told Mr. Young or Mrs. Morgan after he signed each. Mr. Young testified that he was probably advised by Mr. Morgan that Mr. Morgan was going to sign the consents before he signed each and thought Mr. Morgan had authority to sign them.

The revenue agent testified that he initially identified Mr. Morgan as TMP by alphabetizing the names of the shareholders and treating the Morgans as a single shareholder and that the husband was always considered "the controlling entity in our tax modules". Additionally, he testified that he never doubted that Mr. Morgan was TMP of Bugaboo because Mr. Morgan signed the return and the power of attorney and returned the consent signed. The revenue agent dealt mainly with Thomas G. Windedahl and never met with Mr. Morgan.

Respondent mailed duplicate originals of the notice of final S corporation administrative adjustment (FSAA) addressed to Mr. Morgan as TMP for Bugaboo and to Bugaboo, TMP.

*Industries*

Industries was incorporated in 1954 and elected to be treated as an S corporation in 1959. Before May 1, 1986, Industries used a fiscal year ending April 30; beginning on May 1, 1986, a calendar year was used.

During the fiscal years 1985 and 1986, and the short taxable year ending December 31, 1986, the shareholders and their respective percentages of stock ownership were:

| | |
|---|---|
| F.D. Crowell | 26.7% |
| Philip S. Davidson | 17.6 |
| Heidi N. Sause | 17.6 |
| Margaret Crowell | 6.6 |
| Don-Lee Davidson | 5.7 |
| Amber Davidson | 4.3 |
| Matthew Davidson | 4.3 |
| Cory Sause | 4.3 |
| Taylor Sause | 4.3 |
| Andrew Davidson | 4.3 |
| Caitlin Sause | 4.3 |

Philip S. Davidson and Heidi N. Sause are the son and daughter of Don-Lee Davidson (Mr. Davidson); F.D. Crowell (David Crowell) is Mr. Davidson's nephew; Margaret Crowell is apparently Mr. Davidson's niece; and the remaining shareholders are Mr. Davidson's grandchildren, who were minors during the years in issue. All of Mr. Davidson's grandchildren's shares and some of his children's shares of Industries stock were subject to a voting trust, which he voted. Mr. Davidson owned less stock than his children or nephew or niece for estate planning purposes.

During 1985 and 1986, Mr. Davidson was president, general manager, and chairman of the board of directors of Industries. The bylaws of Industries[3] granted the president general and active management of the business and affairs of the corporation, general supervision over all its property, business, and interests, as well as its officers, employees, and agents, and authority to execute documents.[4] Mr. Davidson ran day-to-day operations, and opened most of the mail during the years 1984 through 1989.

---

[3] These bylaws indicate that certain provisions were amended in 1985 and 1990.

[4] These bylaws provided that the board of directors would designate the person authorized to sign checks, drafts, and similar instruments and authorized the president to sign stock certificates and other documents.

David Crowell was a director, but not an officer, and worked only 6 to 8 hours per week for Industries as a management trainee in the payroll department while attending college and graduate school. Mr. Davidson's son and daughter were directors and officers; his daughter visited Industries once or twice a week.

George Windedahl was the C.P.A. for Industries since about 1970. During the years in issue, Mark Vonderheit, an accountant, was employed by Industries at various times as controller, treasurer, and assistant secretary of Industries. Mr. Vonderheit prepared or supervised the preparation of the information from which George Windedahl and Thomas G. Windedahl, his son, prepared the tax returns, and he reviewed the returns; he was the individual within Industries whom the Windedahls would contact regarding tax matters. Mr. Davidson was Mr. Vonderheit's supervisor and instructed Mr. Vonderheit not to sign returns because Mr. Davidson preferred to sign all returns.

The returns for Industries for the years in issue were signed by Mr. Davidson as president. The Schedules K-1 attached to the returns reflected the names and respective percentage stock ownership and share of income of each shareholder. The returns for these years did not require, or include, a designation of a TMP for Industries.

On May 26, 1987, Mr. Davidson signed as president of Industries a Form 2848, Power of Attorney and Declaration of Representative, relating to the fiscal year 1986 and appointing the Windedahls as representatives. He signed similar powers of attorney as president for each of the years in issue on March 11 and August 22, 1988, the latter of which appointed two of Industries' attorneys, along with the Windedahls, as representatives.

By letter dated June 8, 1987, addressed to Mr. Davidson at Industries, the Portland, Oregon, District Director indicated that the Internal Revenue Service was beginning an examination of Industries relating to the fiscal year 1986. A similar letter dated March 7, 1988, addressed to the TMP of Industries was sent by the District Director relating to each of the years in issue.

Before April 1988 by telephone and at a meeting with the Windedahls and a forestry expert of the Internal Revenue Service, Mr. Vonderheit responded to the revenue agent

assigned to the examination of Industries that Mr. Davidson was its TMP.

By letter dated April 27, 1988, addressed to the TMP of Industries, the District Director sent a Form 872-S, Consent to Extend the Time to Assess Tax Attributable to Items of an S Corporation, relating to the fiscal years 1985 and 1986. The Form 872-S provided that the limitations period be extended through March 15, 1990, and had Mr. Davidson's name typed under the line for the TMP's signature. The Form 872-S was signed by Mr. Davidson on the line designated for the TMP on April 28, 1988, and by an Internal Revenue Service group manager on May 4, 1988. Shortly thereafter, George Windedahl received a copy of the Form 872-S.

By letter dated February 21, 1989, a copy of the proposed adjustments to the returns of Industries for the years in issue was sent to Mr. Davidson as TMP, and copies of the February 21, 1989, letter to Mr. Davidson and proposed adjustments were sent to George Windedahl and Industries' attorney.

The returns for Industries for the tax years 1987 and 1988, which designated Mr. Davidson as TMP of Industries, were signed by George Windedahl as preparer and Mr. Davidson as president in March 1988 and March 1989, respectively. Although George Windedahl completed the designation, he testified he was not familiar with the term TMP.

A protest to the proposed adjustments dated March 24, 1989, filed by one of Industries' attorneys with the Internal Revenue Service, stated that Mr. Davidson was the TMP of Industries.

By letter dated August 15, 1989, addressed to Industries, c/o the TMP, the District Director forwarded a second Form 872-S, which provided that the limitations periods for the years in issue be extended through October 15, 1990, and had Mr. Davidson's name typed under the line for the TMP's signature. The second Form 872-S was signed by Mr. Davidson on the line for TMP and on the line for authorized representative of Industries on August 21, 1989, and by an Internal Revenue Service group manager on September 5, 1989. Shortly thereafter, George Windedahl received a copy of the second Form 872-S.

A summary report of the examination was forwarded by letter dated October 24, 1988, addressed to Mr. Davidson as

TMP of Industries by the revenue agent. The October 24, 1988, letter also offered to have a closing conference and enclosed a memorandum for signature by Mr. Davidson as TMP providing for waiver of the conference, which Mr. Davidson signed.

No consent to extend the period of limitations for Industries for the years in issue was solicited from or executed by anyone other than Mr. Davidson. Mr. Davidson did not know the meaning of the term "TMP" and relied on the Windedahls for tax advice. He presumed as an authorized representative of Industries that he was authorized to sign the consents. His son "presumed" that Mr. Davidson had authority to sign the consents and testified that Mr. Davidson was "the representative of the family". His daughter was aware that he signed the returns for Industries.

Respondent mailed duplicate originals of the FSAA addressed to Mr. Davidson as TMP for Industries and to TMP, Industries.

### OPINION

Respondent contends that State law and the corporate bylaws authorized Mr. Morgan as secretary-treasurer of Bugaboo and Mr. Davidson as president of Industries to be the authorized representative of each, and petitioners in each case are estopped from denying that they were properly designated as TMP's or authorized representatives. Alternatively, respondent argues that the consents are binding at least on Mr. Morgan and Mr. Davidson, even if not on the other shareholders. Regarding Bugaboo, respondent also maintains that the failure to revoke the broad authorization granted Mr. Morgan by the 1964 corporate resolution constitutes a ratification of his authority to sign the consents as agent of Bugaboo.

Petitioners contend that the bylaws (1) predate the S corporation elections of Bugaboo and Industries and TEFRA partnership provisions applicable to S corporations, and (2) are not signed by the shareholders and, thus, do not authorize Mr. Morgan or Mr. Davidson to act as representative. They contend that the TMP under the applicable Code sections and regulations was Gertrude Morgan for Bugaboo because "the shareholders held equal profits interests" and her name was

first alphabetically, and David Crowell for Industries because he had "the largest profits interest". They argue that estoppel does not apply inasmuch as an erroneous TMP designation is a mistake of law and the revenue agents had the facts from which to determine the TMP's from the Schedules K-1 with the returns. Additionally, they maintain that the consents are not binding as to Mr. Morgan or Mr. Davidson because they are not consents relating to each individually, but to Bugaboo or Industries, respectively.

Section 6229(a) provides that the period for assessing tax relating to a partnership item shall not expire before the date which is 3 years after the later of the date the partnership return was filed or the date it was due (determined without considering extensions). Pursuant to section 6229(b), the period may be extended (1) as to any partner, by agreement entered into between the Secretary and such partner, and (2) as to all partners, by agreement entered into between the Secretary and the tax matters partner or any person authorized by the partnership in writing to enter into such an agreement.

Section 6231(a)(7)(A) defines the tax matters partner as the general partner so designated as provided in the Treasury regulations. If none is designated, section 6231(a)(7)(B) provides that the tax matters partner is the general partner with the "largest profits interest" in the partnership at the close of the tax year or, if no one partner has the largest profits interest, then the partner whose name appears first alphabetically. If there is no designation, and it is impracticable to apply the other rules, the Secretary is to select a tax matters partner. Sec. 6231(a)(7).

Except to the extent modified or made inapplicable by regulations, section 6244 makes the TEFRA partnership provisions applicable to "subchapter S items" for tax years beginning after December 31, 1982. The term "subchapter S items" includes items of income, gain, loss, deduction, or credit of the S corporation. Sec. 6245; sec. 301.6245-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003 (Jan. 30, 1987). The legislative history indicates that Congress recognized that modifications to the TEFRA partnership provisions were necessary to account for the differences between a corporation and a partnership. The Senate Finance Committee report commented:

For example, the selection of a person to act on behalf of the corporation in the way the tax matters partner acts on behalf of a partnership must take into account that a corporation has no person to correspond to a general partner, as such (since the corporate shareholders are not liable for the corporation's debts, as is a general partner). * * *

S. Rept. 97-640, at 25 (1982), 1982-2 C.B. 718, 729; see also H. Rept. 97-826, at 24 (1982), 1982-2 C.B. 730, 741. Despite the long period that has elapsed, the Secretary has not yet issued regulations defining the term "TMP" with respect to S corporations.

In the absence of regulations defining the TMP with respect to S corporations, this Court has concluded that, if there is no designation, the person owning the largest shareholder interest is the TMP. *Modern Computer Games v. Commissioner*, 96 T.C. 839, 842 (1991).

Neither Bugaboo nor Industries designated a TMP. Mr. Davidson did not own the largest shareholder interest in Industries; David Crowell did. Mr. Morgan owned an equal interest with Mrs. Morgan in Bugaboo, and her name would appear first alphabetically. Under the only rules which exist presently, neither Mr. Morgan nor Mr. Davidson is a TMP; rather, the TMP of Bugaboo is Mrs. Morgan, and the TMP of Industries is David Crowell.

We consider the validity of the consents in issue to turn on whether Mr. Morgan and Mr. Davidson were persons authorized in writing by Bugaboo and Industries, respectively, to enter into the consents as provided in section 6229(b)(1)(B).

With respect to partnerships, this Court has concluded that the written authorization does not have to be specific; a broad grant of authority in the partnership agreement will suffice if the authorized person is a general partner who may act as agent under State law for the partnership. *Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. 287, 296-302 (1991); *Iowa Investors Baker v. Commissioner*, T.C. Memo. 1992-490. In *Cambridge Research & Dev. Group*, the consent was signed on the line for the tax matters partner by the general partner who had signed the return and been represented as the tax matters partner in the protest submitted to the Internal Revenue Service, rather than his brother, the other general partner whose name was first in alphabetical order. The partnership had not designated a tax matters partner. Based on the uniform limited partnership act

adopted by Connecticut, we concluded that a general partner could act as an agent for the partnership for purposes of its business. The partnership agreement did not restrict the scope of this agency, but authorized general partners to "take any action or do anything in furtherance of the Partnership business" and granted a power of attorney from the limited partners to each general partner to execute any instrument deemed advisable for the partnership to file. *Cambridge Research & Dev. Group v. Commissioner, supra* at 289. We concluded that the authorization in the partnership agreement signed by all the partners constituted written authorization by the partnership under section 6229(b)(1)(B). Referring to *Amesbury Apartments, Ltd. v. Commissioner*, 95 T.C. 227 (1990), we commented that the partnership entity acting through a general partner, who was not the tax matters partner, could delegate authority to execute consents. Alternatively, the partners through the partnership agreement which they signed could delegate such authority, and "we may look to either source (partnership or partners)" for written authorization under section 6229(b)(1)(B). *Cambridge Research & Dev. Group v. Commissioner, supra* at 301. Finally, we concluded that signing the consent on the line for the tax matters partner by the general partner who was not the tax matters partner, rather than the line for the authorized representative, did not invalidate the consent. Under similar circumstances, we emphasized the facts indicating agency authority of the general partner to a third party in *Iowa Investors Baker v. Commissioner*, T.C. Memo. 1992-490, stating:

> We note that only Smith was expressly empowered to act on behalf of the partnership in all business matters. There was no specific reference to the partnership provisions contained in the Internal Revenue Code (secs. 6221-6233). It would be anomalous to find that Smith was so empowered and yet unable to bind the partnership in matters concerning the reporting of tax. This is especially true here where Smith was also the return preparer and signed the return on behalf of the partnership as a general partner. * * *

We recognize the differences between S corporations and partnerships, most notably that an S corporation shareholder does not have the liability for corporate debt that a general partner will have for a partnership debt as emphasized in the legislative history. S. Rept. 97-640, at 25 (1982), 1982-2

C.B. 718, 729; H. Rept. 97-826, at 24 (1982), 1982-2 C.B. 730, 741. However, the principles we set forth in *Cambridge Research & Dev. Group v. Commissioner, supra*, and *Iowa Investors Baker v. Commissioner, supra*, applicable to the partnerships as entities appear equally appropriate to apply to an S corporation.

A corporation can act only through its officers, agents, and employees. See *Wiggins v. Barrett & Associates, Inc.*, 295 Or. 679, 669 P.2d 1132, 1138-1139 (1983). Mr. Morgan as secretary-treasurer was the only shareholder with authority over office operations and tax matters as to Bugaboo. Mr. Davidson as president was the only shareholder with authority over tax matters as to Industries. Each signed the returns and power of attorney forms to appoint outside accountants and attorneys to represent his respective S corporation for the years in issue before the Internal Revenue Service.

The Bugaboo bylaws combined with the resolution of the March 3, 1964, special meeting of the board of directors authorize Mr. Morgan to "transact all and every kind of business", "execute * * * any and all instruments necessary" thereto, and "perform all and every act and thing he deems desirable for the benefit of [Bugaboo]." There was no evidence presented that this authority was ever restricted or changed. The Industries bylaws, which were amended in 1990, authorized Mr. Davidson to generally manage the business, supervise all property, business, interests, officers, employees, and agents, and execute documents.

Under Oregon law, we conclude that Mr. Morgan and Mr. Davidson were authorized as agents to represent Bugaboo and Industries, respectively. See *Wiggins v. Barrett & Associates, Inc., supra*; see also *Badger v. Paulson Inv. Co.*, 311 Or. 14, 803 P.2d 1178, 1184 (1991). The authority was not restricted by corporate bylaws or otherwise but was broadly written therein so as to constitute written authorization of each S corporation pursuant to *Cambridge Research & Dev. Group v. Commissioner, supra*. These bylaws and the resolution of the March 3, 1964, special meeting of the Bugaboo directors were the appropriate means under Oregon law to delegate such broad authority to the Bugaboo secretary-treasurer, Mr. Morgan, and the Industries president, Mr. Davidson, respectively. Or. Rev. Stat. secs. 57.141, 57.180, 57.236(2) (1983).

We conclude that the consents in issue were executed by a person authorized in writing by each S corporation under section 6229(b)(1)(B) and are valid. The validity is not affected by the facts that Mr. Morgan and Mr. Davidson signed the consents in issue on the lines designated for the TMP as was the case with the general partner who was not the tax matters partner in *Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. at 302. In reaching these conclusions, we emphasize that the persons authorized here are the shareholder-corporate officers with broad business authority and ultimate authority over general tax matters.

Petitioners contend that the bylaws and resolution for Bugaboo do not constitute written authorization under section 6229(b)(1)(B) because they (1) predate the respective elections to be treated as S corporations and "the unified audit procedures", and (2) are not signed by all the shareholders. In their respective reply briefs, petitioners also state that the minutes evidencing the resolution for Bugaboo were signed only by Mr. Morgan, secretary-treasurer, and the bylaws for Industries in the record are unsigned. We reject these contentions. First, under Oregon law, the bylaws and resolution of the directors are the means of delegating authority to the officers to act for the corporation. See Or. Rev. Stat. secs. 57.141, 57.180, 57.236(2) (1983). Section 6229(b)(1)(B) provides for written authorization by the partnership, and under *Cambridge Research & Dev. Group v. Commissioner, supra* at 300-301, we stated that such authorization may come from either source, the partnership or the partners. Second, the bylaws and resolution of the directors of Bugaboo were the only existing written delegation of authority to Mr. Morgan and were left unamended by the directors; following the S corporation election and application of the TEFRA partnership provisions to S corporations, the directors could have amended these bylaws and resolution to limit Mr. Morgan's authority as secretary-treasurer (i.e., agent) of Bugaboo but left them in effect. The bylaws of Industries indicate that some of the provisions were amended in 1985 and 1990, but Mr. Davidson's broad authority was not restricted. Similarly, the suggested points in petitioners' reply briefs are meritless and untimely, especially regarding the bylaws of Industries, which were stipulated by the parties as a joint exhibit. See *Roy H. Park*

*Broadcasting, Inc. v. Commissioner*, 78 T.C. 1093, 1136 n.40 (1982).

Petitioners argue further that pursuant to section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6789 (Mar. 5, 1987), which was issued before the consents in issue were signed and embodied in the instructions to the Form 872-S, there were no adequate written statements authorizing Mr. Morgan and Mr. Davidson to sign the consents. Section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra*, states that any partnership may authorize any person to sign a consent to extend the assessment period by filing a statement with the appropriate Internal Revenue Service service center. The statement filed is to provide that it authorizes such person to extend the period, identify the partnership and such person by name, address, and taxpayer identification number, specify the partnership year for which the authorization is effective, and be signed by all general partners. We have concluded with respect to partnerships that specificity of the written authorization is not required. See *Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. at 300-301; *Amesbury Apartments, Ltd. v. Commissioner*, 95 T.C. at 242-243. Petitioners argue that the conclusions in these cases are dicta because the temporary regulations were issued after the consents in issue were signed, not before as occurred here. Regardless, we adopt the conclusions that specificity in the written authorization by an S corporation is not required. In doing so, we note that section 301.6229(b)-1T, Temporary Proced. & Admin. Regs., *supra*, does not specifically apply to S corporations. We are not convinced by petitioners that written authorization in the bylaws of Bugaboo and Industries and the resolution for Bugaboo was insufficient for Mr. Morgan, as secretary-treasurer and shareholder, and Mr. Davidson, as president and shareholder, to sign the consents in issue.

Petitioners attempt to distinguish *Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. 287 (1991), by emphasizing that the partnership agreement there granted a power of attorney from the limited partners to execute any instrument required or deemed advisable for the partnership to file in favor of the general partner who signed the consent. We view this distinction to be inconsequential here; under

Oregon law, the bylaws or other delegations of authority to the officers by the corporate directors provide determinative authority. See Or. Rev. Stat. secs. 57.141, 57.180, 57.236(2) (1983).

In light of our conclusions, we need not reach respondent's alternative arguments. To reflect the foregoing,

*An appropriate order will be issued.*