GERALD THOS. LABORDE AND LINDA E. LABORDE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Borde v. Commissioner
Docket Nos. 11669-84, 6521-86.
United States Tax Court
T.C. Memo 1988-58; 1988 Tax Ct. Memo LEXIS 58; 55 T.C.M. (CCH) 119; T.C.M. (RIA) 88058; February 18, 1988. *58 Held: Losses from commodity futures trading by a trader, as distinguished from a dealer, are capital losses. Gerald Thos. LaBorde, pro se. Janice Chenier Taylor, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' income tax liability for the year 1980 in the amount of $ 9,891.90 and for the year 1982 in the amount of $ 1,381. Due to concessions by both parties, *59 the sole issue for decision is whether the losses incurred by Mr. LaBorde in commodity futures trading in the years 1980 and 1982 are deductible as ordinary losses as claimed by petitioners or as short-term capital losses as determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. At the time of the filing of the petition in this case petitioners were residents of Gretna, Louisiana. Mr. LaBorde has been a member of the Bar of the State of Louisiana, and has engaged in the practice of law from 1969 through the time of trial. In September 1979, while so engaged, Mr. LaBorde commenced trading in commodity futures for his own account. This activity continued without interruption through December 1980. During 1981 Mr. LaBorde discontinued trading at least in part because of his health. However he recommenced trading in April 1982 and then discontinued finally during July 1982. At first Mr. LaBorde used the securities firm of First National Monetary Corporation, with headquarters in Southfield, Michigan, to trade in commodity futures. In approximately February 1980, he switched to Merrill Lynch, Pierce, Fenner & Smith Inc. In *60 1982 he also used Lind-Waldock & Company, Drexel Burnham Lambert, Inc., and E. F. Hutton. At various times Mr. LaBorde traded in currencies, metals, Treasury Bills, grains, and meats. He subscribed for and studied a number of publications pertaining to securities and commodity futures, used various services which commodity traders find useful and during the periods in which he was actively trading he reviewed market data on a daily basis, spending during many parts of this period almost as many hours involved with his commodity trading as with his full-time law practice. While he did not invest on a daily basis, he was rarely out of touch with market conditions. [1]
*61 During the periods involved, Mr. LaBorde's trading activity was frequent and substantial. In 1979 during the 4-month period in which the activity was carried on, he realized income in excess of $ 50,000. This income was reported on petitioners' 1979 Federal income tax return on Schedule C as ordinary income. For the year 1980 petitioners showed on their Schedule C an ordinary loss from Mr. LaBorde's commodity futures trading in the amount of $ 66,767.94. [2] On the Schedule C attached to their 1982 tax return, commodity futures trading loss in the amount of $ 23,784 were claimed as an ordinary loss. Mr. LaBorde had no open positions at the end of 1979, in February 1980, when trading with First Monetary Corporation was terminated, at the end of 1980, or when trading ceased in 1982. We never traded through a managed "account" and all of his trading decisions were made, in the final analysis, by him. None of his commodity futures transactions were hedges or were entered into for the purpose of hedging and at no time *62 did he intend to make or accept delivery of any of the commodities with respect to which he traded in commodity futures. Mr. LaBorde did not purchase commodity futures for long-term investment with the intent of profiting from dividends, interest, or long-term appreciation in value. ULTIMATE FINDINGS OF FACT (1) Mr. LaBorde's intent was to achieve profit from short-term market swings in commodity futures on an exchange. (2) During the periods in 1980 and 1982 during which this activity continued, Mr. LaBorde was a trader in commodity futures as distinguished from either a dealer or an investor. OPINION We have not undertaken to describe commodity futures trading in this opinion or to define the terms which we have used. The mechanics of such activities have been fully described in a number of opinions of this Court, one of the most recent being King v. Commissioner,89 T.C. 445 (1987). The description of trading activities in that opinion is incorporated herein by reference. Respondent argues that Mr. LaBorde's activities did not constitute a trade or business, that he was an investor and not a trader, and that even if we should find that Mr. LaBorde *63 was a trader, he is nevertheless not entitled to treat his losses as ordinary losses. We have found that Mr. LaBorde was a trader in commodity futures and not a dealer. As such, his losses from this activity are capital in nature. Section 1221[3] defines the term "capital asset" in part as follows: For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include -- (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; [Emphasis supplied.] With respect to Mr. LaBorde, the commodity futures which he bought and sold did not constitute stock in trade *64 or inventory nor were they held by him "primarily for sale to customers." It is in the latter respect that a trader is distinguished from a dealer. This exception from the definition of capital assets was added to the predecessor of section 1221 -- section 117 of the Revenue Act of 1934 -- in order to make certain that traders in securities, as distinguished from dealers, were required to treat their gains and losses as capital transactions. The history of this provision is fully set forth in our decision in Wood v. Commissioner,16 T.C. 213, 219-220 (1951), and need not be repeated here. See also King v. Commissioner, supra.[4]
Since the Wood case, we have repeatedly held that traders dealing for their own account in securities as well as commodity futures must treat their gains and losses as capital gains and losses. King v. Commissioner, supra;Vickers v. Commissioner,80 T.C. 394 (1983); Covington v. Commissioner,42 B.T.A. 601 (1940), *65 affd. on this issue 120 F.2d 768 (5th Cir. 1941), cert. denied 315 U.S. 822 (1942). By reason of the Revenue Act of 1934, the pertinent language of which has been continued in successive revenue acts and codes to date, the question of whether Mr. LaBorde should be classified as a trader or as an investor is essentially immaterial in the context of this case. We hold for respondent on this issue. [5]
Decision will be entered under Rule 155.
Footnotes
1. The record contains extensive reports and summaries from the security firms used by Mr. LaBorde together with two exhibits consisting of a total of 5-1/2 pages of summaries of transactions. However, the parties have not stipulated to or stated on brief the number of actual transactions or the number of days of trading activity during the periods while it was going on. It would serve no useful purpose for us to undertake such an analysis of the documents in the record which were furnished to Mr. LaBorde by the securities firm since we are not certain that we could correctly interpret these reports, neither do we need to summarize the lists of commodity trades. ↩
2. The actual loss was more than this sum but petitioners in a Stipulation for Settled Issues, filed after the trial, agreed to limit the claim to this amount. ↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. See, e.g., Paoli v. Commissioner,T.C. Memo. 1988-23↩. 5. We note that in 1979 petitioners reported substantial profits from commodity futures trading activity as ordinary income, which respondent could have but did not correct. We assume that petitioners unfortunately did not protect 1979 with a claim for refund. We express no opinion whether petitioners have any remedy for their erroneous reporting of profits from this trading in 1979 through section 1311 et seq., equitable recoupment or on some other theory. ↩