THREE G TRADING CORP., TRANSFEROR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Three G Trading Corp. v. Commissioner
Docket No. 5530-86.
United States Tax Court
T.C. Memo 1988-131; 1988 Tax Ct. Memo LEXIS 159; 55 T.C.M. (CCH) 489; T.C.M. (RIA) 88131; March 28, 1988; As amended March 29, 1988 Arthur *160 Pelikow, for the petitioner. Roland Barral and Jeannette D. Schmelzle (specially admitted), for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: This case is before us on respondent's motion for partial summary judgment and petitioner's cross motion for summary judgment. The issue for decision on respondent's motion is whether petitioner's losses on commodity futures trading are capital as a matter of law. The issue for decision on petitioner's cross motion is whether the statute of limitations bars assessment of Federal income tax for the taxable year ending September 30, 1980. Petitioner's cross motion was the subject of two hearings at which there was oral testimony supplementing the documentary material submitted with the motion. Under this circumstance, we treat the case as a complete record as to the statute of limitations issue and proceed to treat it as a severed issue. Cf. Carnation Milk Products Co. v. Commissioner,15 B.T.A. 556 (1929); Rule 141(b).[1]
*161 Petitioner, Three G Trading Corp., was a New York corporation with a taxable year ending on September 30. On December 9, 1980, petitioner filed its Federal income tax return for the taxable year 1980. [2] Petitioner dissolved during its taxable year 1982. At all pertinent times, petitioner continued in existence for the purpose of winding up its affairs, and Gary Glass (Glass), who was sole shareholder and president of petitioner, continued to represent petitioner in that activity. Statute of Limitations Issue
On November 24, 1982, Glass signed a Form 872 (Consent to Extend the Time to Assesss Tax), as an agreement between "Three G Trading Corp * * * * and the District Director of Internal Revenue" extending the time to assess petitioner's Federal income tax for the taxable years 1978 and 1979 to December 31, 1983. The area for the taxpayer's signature on the executed form appears as follows: [3]
YOUR SIGNATURE HERE-> (Date signed)
SPOUSE'S SIGNATURE--> (Date signed)
TAXPAYER'S REPRESENTATIVE SIGN HERE-> (Date signed)
CORPORATE *162 NAME----->[Three G Trading]
CORPORATE OFFICER(S)->[Gary Glass] [Former Pres] [11-24-82] (Title) (Date signed)
SIGN HERE-> (Title) (Date signed)
This Form 872 was received by the Internal Revenue Service on November 26, 1982, and signed by Daniel Creegan (Creegan), a Group Manager, on November 29, 1982. On September 26, 1983, Glass signed another Form 872, also as an agreement between "Three G Trading Corp. * * * and the District Director of Internal Revenue" purporting to extend the time for assessing petitioner's Federal income tax for the taxable year 1980 to December 31, 1984. The area for the taxpayer's signature on that executed form appears as follows:
YOUR SIGNATURE HERE->[Gary Glass] [9-26-83] (Date signed)
SPOUSE'S SIGNATURE--> (Date signed)
TAXPAYER'S REPRESENTATIVE SIGN HERE-> (Date signed)
CORPORATE NAME------> CORPORATE OFFICER(S)-> (Title) (Date signed)
SIGN HERE-> (Title) (Date signed)
This Form 872 was received by the Internal Revenue Service on October 3, 1983, and signed by *163 Creegan on October 5, 1983. On December 4, 1984, Glass signed a third Form 872, also as an agreement between "Three G Trading Corp. * * * and the District Director of Internal Revenue" purporting to extend the time to assess petitioner's Federal income tax for taxable years 1978 through 1982 until December 31, 1985. The area for the taxpayer's signature on that executed form appears as follows:
YOUR SIGNATURE HERE-> (Date signed)
SPOUSE'S SIGNATURE--> (Date signed)
TAXPAYER'S REPRESENTATIVE SIGN HERE-> (Date signed)
CORPORATE NAME----->[Three G Trading Corp (A Liquidated Corp)]
CORPORATE OFFICER(S)->[(Former Pres)] (Title) (Date signed)
SIGN HERE->[Gary Glass] [12-4-84] (Title) (Date signed)
This form was signed on behalf of the District Director by Michael Bernstein on December 6, 1984. In general, taxes imposed by the Internal Revenue Code must be assessed within 3 years from the time that the return is filed. Sec. 6501(a). For purposes of determining the 3-year period, a return filed before its due date is deemed to *164 have been filed on the due date. Sec. 6501(b)(1). The period for assessment may be extended by agreement, provided that such agreement is executed before the period for assessment, or that period as extended by another agreement, has expired. Sec. 6501(c)(4). [4] Respondent has the burden of proving that such an exception to the statute of limitations applies. Miami Purchasing Service Corp. v. Commissioner,76 T.C. 818, 823 (1981). A facially valid extension agreement, however, shifts to petitioner the burden of proving that it is invalid. Pleasanton Gravel Co. v. Commissioner,85 T.C. 839, 854 (1985). *165 The statute of limitations on petitioner's taxable year 1980 would have expired on December 15, 1983. See secs. 6072(b), 6501(b)(1). Respondent issued his notice of deficiency on December 4, 1985. Thus, absent a timely agreement extending the period within which to assess tax, assessment would be barred by the statute of limitations. Petitioner concedes that Glass had the authority on its behalf to execute an agreement extending the statute of limitations. Petitioner contends that the first agreement with respect to 1980 (the second Form 872 signed by Glass) did not extend the statute of limitations because Glass intended to and did sign it in his individual capacity, rather than as a representative of petitioner. As evidence of this, petitioner points to both Glass's testimony and to the fact that Glass signed the Form 872 in the space for an individual's signature rather than in the space provided for a corporate signature. [5] Respondent, on the other hand, contends that Glass's signature was a valid exercise of his authority, and that, in any event, petitioner is now estopped to deny the validity of the agreement. *166 We turn first to the question of whether the agreement is valid on its face, or whether, by signing the form 872 in the space for an individual taxpayer's signature and without any indication of his title or other authority, Glass nevertheless waived the statute of limitations on behalf of petitioner. We hold that the agreement is valid on its face. To be valid, an agreement extending the statute of limitations need not be executed perfectly, although respondent bears the risk of material defects in execution if he relies on such an agreement. Eversole v. Commissioner, T.C. 56, 61 (1966); cf. Sanderling, Inc. v. Commissioner,66 T.C. 743, 752 (1976), affd. 571 F.2d 174 (3d Cir. 1978). In Eversole, we were faced with the question whether a waiver addressed to "Estate of John T. Eversole, Deceased and Mrs. Ina Eversole, surviving wife" and signed "Estate of John T. Eversole, Deceased and Mrs. Ina G. Eversole, Surviving Wife" by "Ina Eversole" was valid not only as to Ina Eversole individually but also as to the estate. We rejected the taxpayer's *167 contention that the waiver was invalid as against the estate because she did not indicate that she was signing in a representative capacity as well as on her own behalf. We emphasized that "at no time was anyone, other than Ina, the representative of the estate." 46 T.C. at 61. We distinguished Carnation Milk Products Co. v. Commissioner, supra, heavily relied on by petitioner herein, on the ground that a second entity different from the taxpayer had signed the agreement pointing out that the issue in Carnation was who signed, while in Eversole the issue was "how (in what capacity)" it was signed. 46 T.C. at 61 (emphasis in original). The same distinction applies herein, since there is no question that Glass was authorized to sign on behalf of petitioner. In Pleasanton Gravel Co. v. Commissioner,85 T.C. at 854, we held that the failure to include the name of the taxpayer-corporation with the signature of its president constituted a mere clerical error which did not invalidate the waiver. The agreement in *168 that case was one of a series, the others of which had been properly executed. 85 T.C. at 854. Here, although it was the first agreement of three addressed to petitioner and executed by Glass on behalf of petitioner, the other two having been executed in strict compliance with the form. We are satisfied that, in light of Eversole and Pleasanton Gravel, the waiver herein in respect of 1980 is on its face a valid agreement extending the statute of limitations. Petitioner therefore has the burden of proving it invalid. The only evidence offered by petitioner is Glass's testimony that, when he signed the waiver, he intended to sign on his own behalf and not on behalf of petitioner and that he signed only after consulting with his counsel. There is conflicting testimony as to the means by which Glass received the waiver, i.e., in person from the revenue agent (according to Glass) or from his and petitioner's accountant (according to the revenue agent who testified from his activity log that the waiver was given to the accountant). The mail method is consistent with respondent's normal procedure for soliciting extension agreements. Petitioner offered no evidence *169 other than Glass's self-serving testimony; neither the accountant nor the counsel having been called to corroborate Glass's assertions. Under these circumstances, we are not required to accept Glass's testimony as gospel. See Tokarski v. Commissioner,87 T.C. 74, 77 (1986). We hold that petitioner has failed to carry its burden of proving the waiver invalid. Under these circumstances, we need not deal with respondent's alternative estoppel theory. Ordinary versus Capital Loss Issue
Petitioner reported $ 3,321,200 in ordinary loss during taxable year 1980. There is no dispute that the source of this loss was trading in commodity futures contracts. Petitioner also reported $ 3,237,260 of ordinary income in taxable year 1980, which it offset against this loss. Respondent disputes petitioner's assertion that the source of the income was also commodity futures contracts trading. Under section 1221, commodity futures contracts are capital assets even though a taxpayer may be in a trade or business with respect to his dealing in such contracts. The only exception *170 is where the taxpayer holds the property in question "primarily for sale to customers in the ordinary course of his trade or business," i.e., as a dealer. Smith v. Commissioner,33 T.C. 465, 482-483 (1959), affd. in part and revd. in part on other issues 313 F.2d 724 (8th Cir. 1963); see also Vickers v. Commissioner,80 T.C. 394 (1983). [6] It is clear that petitioner was not a dealer in commodity futures contracts during the taxable year in question because a dealer requires customers and petitioner concedes that it had no customers. See King v. Commissioner,89 T.C. 445, 458 (1987). Petitioner also concedes that it did not acquire any commodity futures contracts under circumstances that might categorize them as hedges so as to be within the ambit of Corn Products Refining Co. v. Commissioner,350 U.S. 46 (1955). [7] In view of the foregoing, it is clear that there are no disputes as to the facts relevant to characterizing any otherwise deductible losses [8] as capital or ordinary, so that summary judgment is appropriate on this issue. See Rule 121(b). Therefore, to the extent that petitioner had *171 otherwise deductible losses in respect of commodity futures contracts, they are capital losses. In addition, to the extent that any amount reported by petitioner as ordinary income was derived from trading in commodity futures contracts, we hold that those gains are capital gains. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and, unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue. ↩
2. We will refer to petitioner's fiscal years as taxable years without reference to the month and day on which they ended. ↩
3. The material in brackets was handwritten on the three Forms 872 involved herein. ↩
4. In relevant part, that subsection provides: (4) EXTENSION BY AGREEMENT. -- Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title * * * both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.
Section 6501(c)(4)↩. 5. If the first 1980 agreement is not valid, the second 1980 agreement also would not be valid because it would not have been executed within the time provided for assessment. Sec. 6501(c)(4)↩. 6. See also LaBorde v. Commissioner,T.C. Memo. 1988-58; Swartz v. Commissioner,T.C. Memo. 1987-582↩, and cases collected therein. 7. We note that any more expansive reading of Corn Products has been rejected. Arkansas Best Corp. v. Commissioner,↩U.S. (March 7, 1988, No. 86-751). 8. Respondent has reserved the right to dispute the bona fides of petitioner's commodity futures transactions on which it claims losses. ↩