MONETARY II LIMITED PARTNER-SHIP, J. Thomas Hannan, Tax Matters Partner, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.

No. 93–70384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 14, 1994.

Decided Feb. 2, 1995.

Curtis W. Berner, Buell & Berner, San Francisco, CA, for petitioner-appellant.

Sarah K. Knutson, U.S. Dept. of Justice, Washington, DC, for respondent-appellee.

Before: LAY,* PREGERSON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

■ We must decide whether a former partner can consent to extend the limitations period for the assessment of federal income tax attributable to the partnership's activities.

I

Monetary II Limited Partnership ("Monetary" or "the partnership") is a California limited partnership that invests in oil and gas properties. At its formation, the partnership had only two general partners, Arthur Lachman and Richard W. Naumann, each of whom had a 1.06 percent interest in the partnership. In March 1985, Lachman and Naumann resigned from the partnership and, from that time forward, neither held any interest. Subsequent to their resignation, Edgar Osgood assumed the position of general partner.

In early 1986, the Internal Revenue Service ("IRS") sent a letter to Monetary informing it that the partnership's 1983 return had been selected for examination. The letter was addressed to the attention of the "tax matters partner" and mailed to Lachman's address. On February 25, 1986, the revenue agent assigned to the case contacted Naumann regarding this matter, Naumann informed the agent that neither he nor Lachman were partners in Monetary, and that Osgood was the new general partner.

Aware that the limitations period for the assessment of Monetary's partners' 1983 taxes was due to expire in April 1987, the revenue agent sent Osgood a Form 872–P—a consent to extend the limitations period for assessment of taxes attributable to partnership items—requesting that Monetary agree to extend the limitations period until December 1987. Osgood refused to consent to the extension.

Later that summer, the revenue agent met with Osgood and served on him a "summary report." The first paragraph of the form cover letter stated: "We have enclosed a copy of our summary report ... for you in your capacity as Tax Matters Partner." Again, Osgood refused to consent to an extension of the period of limitations.

In mid-November 1986, Linda Fogel, a reviewer with the IRS Examination Division, contacted Lachman by phone regarding an extension of the period of limitations. Lachman, concerned that he had no authority to act on behalf of the partnership, advised Fogel to contact Osgood for the extension. According to Lachman, Fogel told him that "as a matter of law, as [he] was general partner of the Partnership in 1983, his signature was required on the form." Fogel then sent Lachman a Form 872–P. Lachman again phoned Fogel, advising her to contact Osgood. Fogel informed Lachman that as tax matters partner for 1983, his signature was required on the form to make the extension effective. As a result of that conversation, Lachman signed the Form 872–P and returned it to Fogel, extending the limitations period until December 31, 1987. On March 3, 1987, the Commissioner mailed a 60–day letter proposing adjustments to the partnership's 1983 return. This letter was addressed to "Arthur Lachman, Tax Matters Partner" and was sent to the address of the partnership. Later that same month, Osgood was formally designated as the tax matters partner for the 1983 tax year by his filing, along with two other partners, a notice of designation with the IRS, pursuant to section 301.6231(a)(7)–IT(e) of the Temporary Treasury Regulations.

On November 10, 1987, the IRS sent a Final Partnership Administrative Adjustment to Monetary. Osgood, challenging the IRS' action, filed a Petition for Readjustment of Partnership Items in the United States Tax Court. Ultimately, Monetary and the Commissioner resolved all substantive issues relating to the tax treatment of the disputed partnership items, and the parties drafted a closing agreement to that effect. A dispute remained, however, with respect to whether

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

a valid consent to extend the statute of limitations was executed on behalf of the partnership. Monetary argued that Lachman's consent was invalid; thus, Monetary reasoned, the IRS' claim, assessed in November 1987—after the expiration of the original limitations period—could not stand. Monetary filed a motion for summary judgment on this claim.

The tax court denied Monetary's motion for summary judgment in a memorandum opinion issued September 23, 1992, concluding that Lachman's consent validly extended the limitations period. As there were no disputed issues remaining, the Commissioner moved for the entry of judgment which the tax court granted on March 8, 1993. Monetary now appeals from the denial of summary judgment.[1]

## II

At issue is whether Lachman possessed the authority to consent to the extension of the limitations period. Generally, the limitations period for assessing any income tax attributable to a partnership expires three years after the partnership files its return for the tax year in question. 26 U.S.C. § 6229(a). This limitations period can be extended with respect to all partners by an agreement between the Secretary and the tax matters partner ("TMP") or "any other person authorized by the partnership in writing to enter into such an agreement." 26 U.S.C. § 6229(b)(1)(B).

The Internal Revenue Code defines a TMP as follows:

(A) the general partner designated as the tax matters partner as provided in the regulations, or

(B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1

such partner, the 1 of such partners whose name would appear first in an alphabetical listing).

If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner.

26 U.S.C. § 6231(a)(7).

In applying this statutory scheme, the tax court noted that it was undisputed that Monetary made no designation of a TMP for the 1983 tax year until March 26, 1987, when it designated Osgood as TMP. Prior to such designation, the tax court reasoned, pursuant to section 6231(a)(7)(B), the TMP for 1983 was the general partner with the largest profits interest during that year, or, such interests being equal, the partner whose name occurred first alphabetically. The sole general partners for Monetary during 1983 were Lachman and Naumann; as both had equal interests in the partnership, Lachman was the TMP for 1983 because his name appeared first alphabetically.

Monetary challenges this conclusion. In particular, Monetary contends that (1) the Commissioner determined that it was impracticable to use the largest profits interest test and instead selected Osgood as the TMP; and (2) Lachman had resigned as TMP and had effectively communicated his resignation to the Commissioner before he signed the Form 872–P. Monetary also argues that Lachman's consent is invalid because of Lachman's failure to sign the Form 872–P on the correct line and because the Commissioner used duress in obtaining Lachman's consent.

## A

We first consider Monetary's contention that because Lachman was no longer a partner in the partnership and had "no authority

---

1. The denial of a motion for summary judgment is generally not an appealable final order. *See, e.g., White v. Pierce County,* 797 F.2d 812, 814 (9th Cir.1986). In the instant case, however, the denial of summary judgment was accompanied by a final order disposing of all issues before the tax court; the tax court's judgment thus was a

final decision giving this court jurisdiction. *See, e.g., Jones–Hamilton v. Beazer Materials & Serv.,* 973 F.2d 688, 693–94 & n. 2 (9th Cir.1992); *Abend v. MCA, Inc.,* 863 F.2d 1465, 1482 n. 20 (9th Cir.1988), *aff'd,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990).

to act on its behalf," it was impracticable for the Commissioner to apply the largest profits interest test.

Section 6231(a)(7) does not define impracticable. IRS revenue procedures provide us some guidance, however.[2] Under these procedures, the IRS will consider it impracticable to apply the largest profits interest test if on the date that the test is applied, the general partner with the largest profits interest:

(1) is not readily determinable; or

(2) is deemed to have zero profits interest; or

(3) has been suspended from practice before the IRS; incarcerated; or resides outside the United States; or

(4) cannot be located or cannot perform the functions of TMP for any reason.

Rev.Proc. 88–16, 1988–9 I.R.B. 7.

■ Lachman is not incapable of serving as TMP in the manner anticipated by the first three categories. Rather, Monetary's claim would fall within the fourth category— Monetary argues that Lachman cannot perform the functions of TMP because he is no longer a partner of Monetary.[3]

We do not doubt that there may arise a situation in which the cessation of an individual's relationship with the partnership might impair his or her ability to serve as TMP. This is not the situation before us, however, we are ultimately unpersuaded that, based on these facts, Lachman could not adequately protect Monetary's interests. Nor do we believe that the Internal Revenue Code mandates the conclusion that an individual is barred from serving as TMP once he resigns from the partnership. Indeed, temporary

treasury regulations suggest that the fact that an individual is no longer a partner does not disqualify that individual from serving as TMP. These temporary regulations provide that

[a] person may be designated as the tax matters partner of a partnership for a taxable year only if that person

(i) *was a general partner in the partnership at some time during the taxable year for which the designation is made,* or

(ii) is a general partner in the partnership as of the time the designation is made.

Temp.Treas.Reg. § 301.6231(a)(7)–1T(b) (emphasis added). These regulations do not require that the TMP be a partner at the time of designation as such. *See also Montana Sapphire Assocs. v. Commissioner,* 95 T.C. 477, 481, 1990 WL 163978 (1990) (holding that an individual could not serve as TMP for tax year at issue because such individual *"was* not and is not a partner") (emphasis added).

■ Even were we to conclude that Monetary had demonstrated impracticability, it has not adequately shown that the IRS made such determination. Under section 6231(a)(7), the Commissioner must "determine[ ] that it is impracticable to apply" the largest profits interest test, and then "select[ ]" a new TMP. Monetary argues that the Commissioner's course of conduct demonstrates that such a determination was indeed made; in particular, Monetary points to the fact that (1) the summary report delivered to Osgood contained a cover letter that stated, in part, "[w]e have enclosed a copy of our summary report ... for you in your capacity as Tax Matters Partner"; and (2) a

2. Although these procedures did not become effective until March 1988, and thus do not control, they nonetheless provide a suggestion of the factors to be considered in determining impracticability.

3. To support this contention, Monetary cites to *Computer Programs Lambda, Ltd. v. Commissioner,* 89 T.C. 198, 1987 WL 42563 (1987). In *Computer Programs Lambda,* the tax court approved a treasury regulation that terminated a partner's designation as TMP upon the partner's filing of a bankruptcy petition. In so deciding, the tax court emphasized the pivotal fiduciary

role that the TMP plays in relation to the partnership. As Lachman was no longer a partner, Monetary argues, he could not fulfill these duties.

*Computer Programs Lambda* does not directly support Monetary's claim. In *Computer Programs Lambda,* bankruptcy regulations prohibited debtors in bankruptcy from participating in tax court proceedings. Thus, the TMP at issue was legally barred from participating in the relevant litigation, and so was incapable of adequately protecting the partnership's interests. Monetary has failed to demonstrate any such legal impediment to Lachman's participation here.

revenue agent twice asked Osgood to consent to the extension of the limitations period.

The conduct of the Commissioner demonstrates confusion and perhaps even bad faith; however, we are not persuaded that such conduct indicates that the Commissioner made a determination of impracticability. The correspondence to which Monetary refers, although delivered to Osgood, was addressed generically to Monetary; nowhere within the letter was it stated that the IRS had selected Osgood as TMP. Such correspondence is not authoritative evidence of the Commissioner's determination of impracticability nor of a selection of Osgood as TMP. *See, e.g., PAE Enter. v. Commissioner,* 55 T.C.M. (CCH) 875, 876, 1988 WL 47448 (1988) ("[S]imply because [the partner] may have been eligible to be selected and referred to in some correspondence from [a revenue agent] as the TMP for PAE, does not mean that [the Commissioner] utilized the selection process within the meaning of the last sentence of section 6231(a)(7)."); *see also Amesbury Apartments Ltd. v. Commissioner,* 95 T.C. 227, 233, 1990 WL 128878 (1990) (two pieces of correspondence in which revenue agent referred to partner as TMP did not evidence selection of that partner as TMP); *Sierra Design Research and Dev. v. Commissioner,* 58 T.C.M. (CCH) 164, 167, 1989 WL 104936 (1989) (letter addressed to partner as TMP did not indicate that determination of impracticability was made).

Similarly, the fact that a revenue agent twice asked Osgood to consent to an extension, although perhaps more suggestive of selection than the correspondence, ultimately fails to convince us that the Commissioner selected Osgood as TMP. Under section 6229(b)(1)(B), an extension can be authorized by the TMP or by "any person authorized by the partnership in writing to enter into an agreement." The revenue agent's contact with Osgood does not demonstrate that the Commissioner selected Osgood as TMP; rather, it shows only that the IRS accepted Naumann's representation that Osgood, as sole partner of Monetary, was the party that should be consulted—a party authorized to enter into the necessary agreement.

**B**

Having rejected Monetary's assertion of impracticability, we turn to Monetary's second contention—that Lachman resigned as TMP, and conveyed his resignation to the Commissioner, thus making Lachman ineligible to serve as TMP.

■ The Internal Revenue Code does not describe the manner in which a TMP can resign. The Treasury Department has, however, issued temporary regulations setting forth these procedures. Although these regulations were issued after Lachman signed the Form 872–P, they nonetheless apply. Treasury regulations are ordinarily retroactive to the effective date of the statute to which they relate unless such regulations change settled law or the application thereof would be unduly harsh to a particular taxpayer.[4] *See, e.g. Redhouse v. Commissioner,* 728 F.2d 1249, 1251–52 (9th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 397 (1984).

■ Under the temporary regulations, a TMP appointed pursuant to the largest profits interest test cannot simply resign his post. Rather, a designation of a TMP remains in effect until:

(1) the death of the TMP; or

(2) an adjudication that the individual designated as TMP is incompetent; or

(3) the liquidation or dissolution of the TMP if the TMP is an entity; or

(4) the partnership items of the TMP become non-partnership items under section 6231(c);

---

**4.** The regulation at issue here is a temporary treasury regulation. We find no distinction in the retroactive effect of temporary and permanent treasury regulations, however. Rather, the relevant code section applies to "any ruling or regulation, relating to the internal revenue laws." 26 U.S.C. § 7805(b); *see also* § 7805 CCH Explanation ¶ 44282.0122 ("The law establishes a presumption of retroactive application of a temporary regulation unless retroactivity would be an abuse of the IRS's discretion or the IRS specifically states otherwise.").

(5) the day on which a new TMP is designated pursuant to subsections (d), (e) or (f) of the temporary regulations.[5]

Temp.Treas.Reg. § 301.6231(a)(7)–1T(m).

■ Only the fifth criteria is relevant to the instant case. Osgood was designated as Monetary's new TMP pursuant to subsection (e) of the temporary regulations. His designation did not occur until March 1987, however—nearly four months after Lachman signed the Form 872–P. Thus Lachman's status as TMP was not terminated until after he consented to the extension.

The retroactive application of this regulation neither changes settled law nor is unduly harsh in its result. As Monetary admits, prior to the issuance of this regulation, there was no settled manner in which a TMP could resign. Thus, Monetary cannot claim that it relied to its detriment on settled principles, altered by the temporary regulations. In any event, the Treasury Department published the identical regulations in proposed form on April 18, 1986, nearly eight months before Lachman signed the consent at issue here. *See* 51 Fed.Reg. 13,231, 13,245 (1986); *Redhouse*, 728 F.2d at 1252 (affirming retroactive application of Treasury regulation where taxpayer had notice of change).

## C

■ We next consider the significance of a technical imperfection in Lachman's signed consent. Form 872–P contains two lines for signatures: the first states "Tax Matters Partner," and the second "Authorized Representative Sign Here." Lachman printed his name on the first line and signed his name on the second. In Monetary's view, this error vitiates Lachman's consent.

The tax court has, in several instances, concluded that the incorrect location of a party's signature on a waiver of the statute

of limitations form does not render the waiver invalid. *See, e.g., Cambridge Research v. Commissioner,* 97 T.C. 287, 302, 1991 WL 169192 (1991) (finding it of "no moment" that authorized representative signed on the line designated for the signature of the tax matters partner); *Three G Trading Corp. v. Commissioner,* 55 T.C.M. (CCH) 489, 491, 1988 WL 24946 (1988) ("To be valid, an agreement extending the statute of limitations need not be executed perfectly."); *Eversole v. Commissioner,* 46 T.C. 56, 61, 1966 WL 1136 (1966) (waiver signed by executor valid despite executor's failure to indicate that she was signing in representative capacity). We are persuaded that Lachman made an inadvertent error in signing the form, printing his name on one line and signing it on the next; such error is of no significance in determining the validity of Lachman's consent.

## D

Finally, we consider Monetary's argument that Lachman's consent is invalid because it was obtained through duress. Monetary neither raised this issue below, nor provides any justification for its failure to do so. "As a general rule, an appellate court will not consider arguments which were not first raised before the district court, absent a showing of exceptional circumstances." *FSLIC v. Butler,* 904 F.2d 505, 509 (9th Cir.1990). As no exceptional circumstances affecting failure to raise the issue have been demonstrated, Monetary is deemed to have waived this claim.

## III

In affirming the tax court, we do not endorse the conduct of the Commissioner in this case which is indeed suggestive of bad

---

5. Monetary argues that, pursuant to Temporary Treasury Regulation § 301.6231(a)(7)–1T(1), a TMP can terminate his designation as such by resigning in compliance with § 301.6231(a)(7)–1T(i). Under subsection (i), "A person designated as the tax matters partner of a partnership under this section may resign at any time by a written statement to that effect." Monetary contends that because these regulations did not exist at the time of Lachman's resignation as TMP, it

is not necessary that Lachman have resigned in writing; it is sufficient that he orally communicated his intent to resign to the Commissioner. Monetary's argument fails because § 301.6231(a)(7)–1T(1) applies only to the termination of a TMP designated by the partnership. A TMP designated by the largest profits interest test cannot resign in the manner set forth in subsection (i).

faith or unfair dealing in the manner in which the partnership extension was obtained. While perhaps manipulating the law, however, the Commissioner remained at all times within its letter.

**AFFIRMED.**