T.C. Memo. 1997-396

UNITED STATES TAX COURT

S. BYRNE DOYLE and BARBARA S. DOYLE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8309-96.                    Filed August 28, 1997.

<u>Mark Clement</u>, for petitioners.

<u>Donna P. Leone</u>, for respondent.

MEMORANDUM OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency of
$3,199 in petitioners' 1983 Federal income tax, an addition to
tax of $160 under section 6653(a)(1),[1] an addition to tax under

---

[1]  Unless otherwise indicated, all statutory references are
to the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

section 6653(a)(2) equal to 50 percent of the interest due on the deficiency, an addition to tax of $960 under section 6659, and increased interest under section 6621(c). After concessions by petitioners, the issue for decision is whether the period for assessment under section 6229 was validly extended by the general partner of the partnership of which petitioner S. Byrne Doyle was a limited partner.

Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts is incorporated herein by this reference and found accordingly. We set forth below only those facts pertinent to our decision. For general background, see our opinion in Brown v. Commissioner, T.C. Memo. 1992-379, affd. without published opinion sub nom. Konenkamp v. Commissioner, 14 F.3d 47 (3d Cir. 1993), where issues for previous years involving petitioners and the tax aspects of the partnership were discussed.

At the time of the filing of the petition, petitioners resided in western Pennsylvania. Petitioners filed a joint 1983 Federal income tax return.

The partnership was organized under the laws of the Commonwealth of Pennsylvania to engage in racing and breeding standardbred horses, including Shane T. Hanover, a standardbred race horse (Shane). Petitioner S. Byrne Doyle was a limited

partner of the partnership. Doyle's capital contribution to the partnership was $17,000. The partnership consisted of 28 limited partners and 1 general partner. The total capital contribution by all partners to the partnership amounted to $425,000.

Originally, Thomas R. Jonell was the general partner of the partnership. Each of the limited partners signed special powers of attorney in favor of Mr. Jonell. Mr. Doyle signed his on December 1, 1981. The power of attorney authorized Mr. Jonell to execute the certificate of limited partnership on behalf of Mr. Doyle, which would make him a limited partner, as well as to execute the agreement of limited partnership (the partnership agreement) on his behalf. Mr. Jonell signed the Pennsylvania partnership certificate. A copy of the partnership agreement which was proposed to govern the partnership was attached to the private placement memorandum for the partnership. It gave the following powers to the general partner:

> 8.1 Rights and Powers of General Partner
> Except as expressly provided herein, the General Partner shall have the exclusive right to manage the business of the Partnership and is hereby authorized to take any action of any kind and to do anything and everything he deems necessary in connection therewith. [Emphasis added.]

The general partner's authority was limited only with respect to certain major actions, such as disposing of substantially all of the partnership's assets and borrowing other than in the ordinary course of business. Paragraph 9.2 of the partnership agreement

set forth the procedure for the withdrawal of the general partner.

During 1983, Daniel J. Farley was not a partner and had no profit interest in the partnership. During 1984, he acquired a 17.64-percent profit interest in the partnership, and, at the end of 1984, had the largest profit interest in the partnership. During 1985, Mr. Farley acquired an additional 7.88-percent profit interest by purchasing the interests of other partners, including the 2-percent interest held by Mr. Jonell. On April 15, 1985, Mr. Jonell resigned as general partner. He indicated in his letter tendering his resignation that he was resigning pursuant to section 9.2 of the partnership agreement. Mr. Jonell informed respondent that he had resigned as general partner.

Sometime after his resignation, Mr. Jonell proposed Mr. Farley as the new general partner. Mr. Farley served as the interim general partner after Mr. Jonell's resignation. In November 1986, the limited partners signed consents authorizing Mr. Farley to remain as interim general partner. Mr. Doyle signed his consent on November 10, 1986. Mr. Farley kept whatever partnership records existed and communicated with the limited partners.

The United States Trotting Association (USTA) is the sole registry of standardbred horses in the United States and is a national body responsible for the registration of horses and keeping of registration records. On February 27, 1987, ownership

of Shane was transferred to the Danish Breeder's Group of Copenhagen, Denmark (Danish Breeder's), in the records of the USTA. An unsigned copy of the partnership agreement attached to the private placement memorandum was submitted in March 1987 to the USTA in order to show the source of authority to sell Shane to Danish Breeder's.

Procedural Background

The partnership filed returns on a calendar year basis and filed its 1983 return timely on April 15, 1984. In 1986, respondent was conducting an audit of the partnership's 1983 tax year.

At all times, Mr. Farley handled the audit with Revenue Agent James Schrmack. On or about May 12, 1986, Mr. Schrmack and Mr. Farley met to go over the audit. During this meeting, Mr. Schrmack advised Mr. Farley that a notice of the beginning of examination for 1983 had to be sent out to the partnership and that a tax matters partner (TMP) had to be named for the partnership. Because it was probable that the period of limitations would have to be extended, Mr. Schrmack needed someone with whom he could conduct the examination, and someone who could sign a consent to extend the period of limitations. Mr. Schrmack advised Mr. Farley that, in the event a TMP was not named, Mr. Schrmack would have to get Mr. Jonell to sign such a consent. Absent a valid extension, the expiration date for the

period of limitations on the partnership's return for the 1983 tax year was April 15, 1987.

During the May 12, 1986, meeting, Mr. Farley advised Mr. Schrmack that Mr. Jonell had resigned as general partner in 1985 and wanted no further involvement with the partnership, and that he, Mr. Farley, was the general partner and would be the only logical choice as TMP for the partnership because he was the only person sufficiently knowledgeable of the partnership. Mr. Farley and Mr. Schrmack met again on July 28, 1986. In a letter to Mr. Schrmack mailed subsequent to this meeting, Mr. Farley represented to Mr. Schrmack that he, Mr. Farley, was "impowered" (sic) as the "tax matters person" for the partnership.

On October 21, 1986, Mr. Farley executed a Form 872-O, "Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership" with respect to the partnership's 1983 tax year (the 1986 consent). Mr. Farley signed the form on the line calling for the signature of the TMP. The form was executed on behalf of respondent on November 4, 1986. Respondent did not mail a Form 872-N (to terminate the Form 872-O special consent) to the partnership, nor did respondent receive a Form 872-N from the partnership.

No document was filed with respondent designating Mr. Farley as the TMP for the partnership for 1983. The partnership did not designate a TMP on its return for 1983. Respondent did not designate Mr. Farley as TMP. Respondent made no determination

that it was impractical to use the general partner with the largest profit interest whose name appears first in the alphabet as TMP for 1983, nor did respondent make a selection of a TMP for the partnership for 1983 after determining that it was impractical to use the general partner with the largest profits interest whose name appears first in the alphabet.

On August 24, 1987, respondent sent a 60-day letter to Mr. Farley with respect to the partnership. Mr. Farley filed, as authorized representative for the partnership, a written protest in response to the 60-day letter. On October 11, 1988, respondent issued a notice of final partnership administrative adjustment (FPAA) to the partnership for the years 1983, 1984, and 1985 (the 1988 FPAA). The 1988 FPAA was not addressed to a specific individual, but rather was a generic FPAA issued to the TMP for the partnership, at the address on the partnership's 1983 return. Respondent did not allege in the 1988 FPAA that any proposed adjustment to the partnership's 1983 return was due to a false return, fraud, or a gross omission from income.

The partnership, Richard E. Doyle and Nancy B. Doyle,[2] and petitioners, as partners other than the TMP, timely filed a petition for readjustment of partnership items set forth in the FPAA on February 21, 1989 (the 1989 petition), which was docketed

---

[2] Richard and Nancy Doyle are Mr. Doyle's brother and sister-in-law. Brown v. Commissioner, T.C. Memo. 1992-379, affd. without published opinion sub nom. Konenkamp v. Commissioner, 14 F.3d 47 (3d Cir. 1993).

by this Court under number 3318-89.  On January 4, 1995, petitioners filed a petition in the U.S. Bankruptcy Court for the Western District of Pennsylvania.  On January 4, 1995, the partnership proceeding under Tax Court docket No. 3318-89 was still pending.  The filing of the petition in bankruptcy converted petitioners' partnership items to nonpartnership items under section 6231(b)(1)(D) and (c)(2), and section 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6793 (March 5, 1987).  On April 11, 1995, petitioners received a bankruptcy discharge under Chapter 7.  The discharge lifted the automatic stay under 11 U.S.C. sec. 362(a)(8) and (c)(2)(C) (1994) and allowed this Court to enter an order on July 11, 1995, dismissing the case at docket No. 3318-89 as moot because, due to the effect of the bankruptcy of petitioners and another partner and settlements of other partners, there were no partnership items to be readjusted.

On November 13, 1995, respondent issued a notice of deficiency to petitioners in connection with their interest in the partnership (the 1995 notice).  Petitioners did not file a petition with this Court in response to the 1995 notice.  On February 6, 1996, respondent rescinded the 1995 notice with petitioners' consent, under section 6212(d).  On February 6,

1996, respondent issued to petitioners the notice of deficiency (the 1996 notice) which is the basis for this case.

Discussion

The partnership is governed by the TEFRA partnership provisions, found in sections 6221 through 6233.[3]  Under section 6229(a), respondent has 3 years from the date of the filing of partnership return (or the due date for filing such return without regard to extensions) in which to assess the tax attributable to a partnership item or affected item for any person with respect to a given taxable year.  Under section 6229(d), if respondent issues an FPAA within 3 years, the period of limitations of section 6229(a) is suspended for the period during which a partnership-level action may be brought, until the decision of the court in such action, if brought, becomes final, and for 1 year thereafter.

If, by reason of an event described in section 6231(b), a partnership item becomes a nonpartnership item during the period otherwise allowed for assessment under section 6229, the period for assessment ends 1 year after the date upon which the item becomes a nonpartnership item.  Sec. 6229(f).  The 1988 FPAA was

---

[3]  Enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. The provisions are effective for partnership tax years beginning after Sept. 3, 1982.

issued on October 11, 1988. A partnership-level action was brought on February 21, 1989. Petitioners filed a bankruptcy petition on January 4, 1995, which had the effect of converting the partnership items into nonpartnership items as to petitioners as of that date. Secs. 6229(f), 6231(b)(1)(D) and (c)(2); sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6793 (March 5, 1987). The 1995 notice was issued on November 13, 1995, less than 1 year after the date upon which the partnership items became nonpartnership items. That notice was rescinded with petitioners' consent, and the 1996 notice was issued, both on February 6, 1996.[4]

Thus, if the original FPAA was timely, it would have operated to suspend the section 6229(a) period of limitations, which would have remained suspended until 1 year after the partnership items involved in this case became nonpartnership items due to petitioners' bankruptcy. Because the original notice of deficiency was issued within 1 year of the date upon which the the partnership items became nonpartnership items, it would also have been timely. However, the FPAA was not issued until after the expiration date of the 3-year statutory period generally applicable to an assessment with regard to the partnership's 1983 tax year, April 15, 1987, and both notices of

---

[4] Sec. 6212(d) provides that a notice of deficiency that is later rescinded operates to suspend any period of limitations while it is still outstanding. Here, this presents no limit.

deficiency were issued more than 3 years from the date of the original return.    Thus, respondent's action would be time-barred, absent some exception to the general rule.

An exception is embodied in section 6229(b)(1)(B) which provides that the 3-year period may be extended:

> with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement), before the expiration of such period. [Emphasis added.]

The parties agree that there was no TMP for 1983 and, thus, a consent could only have been executed by the "person authorized by the partnership in writing".

Petitioners contend that the 1986 consent signed by the general partner Mr. Farley was ineffective to extend the 3-year period, because Mr. Farley was not "authorized by the partnership in writing" to execute such a consent.  Therefore, according to petitioners, the 1988 FPAA was untimely, and the subsequent 1996 notice of deficiency was consequently also untimely.  Respondent contends that both the 1988 FPAA and the 1996 notice were timely.  According to respondent, Mr. Farley was "authorized by the partnership in writing" to consent to extend the period in which respondent could issue an FPAA, either by the authority granted to him in the partnership agreement, or by State partnership law alone.  Respondent further contends that, even if Mr. Farley was

not so authorized, petitioners should be equitably estopped from denying that Mr. Farley executed a valid consent.

Petitioners concede that, if the 1986 consent was validly executed, then the period of assessment was open under section 6229(b) when the FPAA was issued, the February 6, 1996, notice of deficiency was timely, and, in light of the decision in Brown v. Commissioner, T.C. Memo. 1992-379 (in which petitioners were parties), the substantive determinations set forth therein are correct. Therefore, the only issue for decision is whether the 1986 consent executed by Mr. Farley was valid by virtue of Mr. Farley's having been authorized in writing by the partnership under section 6229(b)(1)(B) to extend the period of limitations.[5]

There are two potential sources of the authority[6] of Mr. Farley: (1) The partnership agreement itself, and (2) Pennsylvania partnership law.

---

[5] In this context, petitioners' arguments as to Mr. Farley's eligibility for TMP status are irrelevant. If he was authorized in writing, he need not even be a partner, let alone the TMP. Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227 (1990).

[6] We need not concern ourselves with the regulations governing agreements to extend the 3-year period of limitations contained in sec. 301.6229(b)-1, Proposed Proced. & Admin. Regs., 51 Fed. Reg. 13231, 13243 (April 18, 1986), and sec. 301.6229(b)-1T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6779, 6789 (March 5, 1987). The temporary regulations, which were adopted after the date upon which Mr. Farley signed the 1986 consent, do not, however, invalidate prior authorization granted by the partnership. Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 242 (1990).

The only partnership agreement in the record herein is a copy of such an agreement attached to the private placement offering which was obviously a proposed agreement and therefore contained no indication that it had been signed. That agreement authorized a general partner to "take any action of any kind and to do anything and everything he deems necessary in connection" with the management of the business of the partnership. Petitioners contend that only an executed partnership agreement could grant Mr. Farley the necessary authority and that, aside from any question as to the scope of the above authorizing language, it cannot provide the necessary foundation for Mr. Farley's action.

Initially, we think it important to emphasize that the expiration of the period of limitations on an assessment is an affirmative defense. Rules 39, 142(a). Petitioners have made a prima facie case that the 1988 FPAA was issued after the 3-year statutory period, thereby shifting the burden of going forward to respondent. Respondent has come forward with evidence that the statutory period was extended by the 1986 consent. If that consent was valid on its face, the burden of going forward shifts back to petitioners to show that the extension was invalid. See Adler v. Commissioner, 85 T.C. 535, 541 (1985). The underlying burden of proof, however, never shifts from petitioners. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933); see

discussion in <u>Amesbury Apartments, Ltd. v. Commissioner</u>, 95 T.C. 227, 240-241 (1990).

A consent is valid on its face if it includes the name of the taxpayer, the signature of the taxpayer or a person authorized to sign on the taxpayer's behalf, the taxable year as to which the period is to be extended, and was signed on a date prior to the expiration of the limitations period. <u>Lefebvre v. Commissioner</u>, T.C. Memo. 1984-202, affd. 758 F.2d 1340 (9th Cir. 1985). A consent signed by a person who has represented the taxpayer before respondent, as Mr. Farley did on several occasions prior to the signing of the 1986 consent, whether signed on the line for "authorized representative", or in this case for "tax matters partner", is valid on its face. <u>Bugaboo Timber Co. v. Commissioner</u>, 101 T.C. 474 (1993); <u>Cambridge Research & Development Group v. Commissioner</u>, 97 T.C. 287 (1991); <u>Amesbury Apartments, Ltd. v. Commissioner</u>, <u>supra</u>. Under the circumstances herein, we reject petitioners' contention that respondent had a duty to look beyond the consent to ascertain whether Mr. Farley was indeed the TMP or otherwise authorized to act for the partnership.

Petitioners also argue that the 1986 consent was not valid on its face because Mr. Farley did not attach a copy of the written authorization from the partnership to the consent form. In this connection, we note that Mr. Farley signed as TMP and

that the consent form did not require the attachment of a copy of the written authorization under such circumstances.  Moreover, the determination of whether a person was authorized to extend the period of limitations does not turn on the existence of a technical defect in the filling out of the form, such as a failure to attach a copy of this authorization.  <u>Monetary II Ltd. Partnership v. Commissioner</u>, 47 F.3d 342, 347 (9th Cir. 1995) (and cases cited threat, especially <u>Cambridge Research & Development Group v. Commissioner</u>, <u>supra</u> at 290 (non-TMP who signed as TMP gave valid consent though the issue of the failure to attach a copy of the written authorization was never raised)), affg. T.C. Memo. 1992-562; <u>Bugaboo Timber Co. v. Commissioner</u>, <u>supra</u> at 485; <u>Pleasanton Gravel Co. v. Commissioner</u>, 85 T.C. 839, 854-855 (1985) (and cases cited threat).

Petitioners now have the burden of going forward with evidence to show that the extension was invalid in order to sustain their burden of proof.  Here, that task translates into a need to show that the <u>particular</u> agreement in the record was <u>not</u> executed, and that Mr. Doyle did <u>not</u> intend to be bound by that agreement in becoming a partner.

Petitioners attempt to sustain their position that there was no executed partnership agreement simply by pointing to the failure of efforts to find such a copy and the failure to supply a signed copy to the USTA.  See <u>supra</u> pp. 4-5.  But such a

failure standing alone is not sufficient evidence to sustain petitioners' contention.[7] We think it was incumbent on petitioners to offer either evidence that might affirmatively establish that the partnership agreement in the form attached to the private placement memorandum was not executed (for example, by way of testimony of Mr. Jonell) or some explanation of their failure to provide such evidence. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The fact that this case was submitted fully stipulated does not relieve petitioners of the usual requirements relating to carrying their burden of proof. Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

We think the absence of any such evidence is critical in light of the facts that Mr. Doyle signed the power of attorney for general partner Mr. Jonell to execute the certificate of limited partnership and the partnership agreement, and that Mr. Jonell then actually signed the partnership certificate, which made Mr. Doyle a limited partner. We think that petitioners should have produced some affirmative evidence to show that Mr.

---

[7] We note here that, under Pennsylvania law, whether petitioners in fact ever received an executed copy of the agreement is irrelevant: "So long as the parties intend to be bound by the contract, the failure of one party to receive an executed copy of the agreement will not prevent it from becoming operative." Daniel Adams Associates v. Rimbach Publishing, Inc., 519 A.2d 997, 1005 (Pa. Super. Ct. 1987).

Jonell did not carry out the other part of his authority under the power of attorney by executing the partnership agreement on behalf of Mr. Doyle. Additionally, we note that Mr. Doyle later consented in a signed writing that Mr. Farley act as general partner after Mr. Jonell had resigned. This would indicate that some agreement in respect of the operations of the partnership existed and that, absent any contrary evidence, the agreement attached to the private placement memorandum represented that understanding.

Furthermore, petitioners have not offered any evidence to indicate that there is a different agreement from the one in the record which governs the partnership of which Mr. Doyle was a member, nor that the partnership agreement in the record pertains to a different partnership. Petitioners concede that Mr. Doyle was a partner, and it is established that the 29 partners involved invested $425,000 in the partnership. Under these circumstances, we think it highly unlikely that there was not an executed partnership agreement.

However, we find it unnecessary to find as a fact that the partnership agreement attached to the private placement memorandum was executed. We simply hold that petitioners have failed to carry their burden of proof that it was not executed. In this context and having in mind the difference in the location of the burden of proof in this case as contrasted with the

Pennsylvania cases cited by petitioners, we have no need to deal with petitioners' assertion that they should prevail because an agreement is unenforceable under Pennsylvania law against a party who has not signed it. Similarly, we have no need, then, to address petitioners' argument that the alleged failure to sign the writing represents a mutual mistake under Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), remanding 44 T.C. 549 (1965), the Court of Appeals to which an appeal herein would lie. We note merely that Danielson stands for the proposition that a party seeking to vary the terms of a contract must show that the contract should not be recognized due to some conduct that invalidated the meeting of the minds necessary for assent to the terms of the agreement, in the nature of fraud, duress, undue influence, or mutual mistake. Id.; Highland Farms, Inc. v. Commissioner, 106 T.C. 237, 255-256 (1996). Petitioners have offered no evidence that Mr. Doyle's relationship to the partnership was somehow tainted and thus invalid. Danielson simply has no application herein.

Having held that petitioners have failed to carry their burden of proving that the partnership agreement was not executed, we are left with the question whether the authority granted to the general partner in the agreement, see supra p. 3, is sufficiently broad to include the signing of the consent by Mr. Farley. We think that, by its terms, it was sufficiently

broad since it is clear that the execution of consent does not fall within the scope of the provisions which limited such authority in respect of a major partnership action. See supra p. 3. Thus, we do not have the situation which existed in Medical & Business Facilities Ltd. v. Commissioner, 60 F.3d 207 (5th Cir. 1995), revg. T.C. Memo. 1994-38, where there was no broad grant of authority to any individual general partner in the partnership agreement and the agreement contained considerably broader restrictions on the actions of an individual general partner than exist herein.

In Cambridge Research & Development Group v. Commissioner, 97 T.C. 287, 289, 300 (1991), we held that the authority granted in a partnership agreement to a general partner to "take any action or do anything in furtherance of the Partnership business" (quoting partnership agreement) was enough to satisfy the requirements of section 6229(b)(1)(B) to authorize that general partner in writing to execute a consent to extend the section 6229(a) period of limitations, as long as extending such a period of assessment was within the scope of partnership business under State law. See Bugaboo Timber Co. v. Commissioner, 101 T.C. at 484. We also held that a high level of specificity for authorizations made before the effective date of the regulations is not required--a broad grant of authority will suffice for the purposes of the statute. Cambridge Research & Development Group

v. Commissioner, supra at 301; see Bugaboo Timber Co. v.
Commissioner, supra.

In this case, the authorizing language in the partnership
agreement is almost identical to that in Cambridge Research &
Development Group, granting the general partner the power "to
take any action of any kind and to do anything and everything he
deems necessary in connection" with the partnership business.
Thus, if such a grant of power is not otherwise restricted under
Pennsylvania law, then the partnership agreement in this case
would qualify as a "writing" under section 6229(b)(1)(B).

We have been unable to find a Pennsylvania case on point.
We thus decide the issue as if we were sitting as the highest
court of that State. Commissioner v. Estate of Bosch, 387 U.S.
456, 465 (1967). In enacting the TEFRA provisions, Congress
clearly intended activities involved in a unified partnership-
level tax proceeding to be partnership business. Cambridge
Research & Development Group v. Commissioner, supra at 298. The
power to extend the section 6229(a) period of limitations has
been found to be within the scope of partnership business under
the Uniform Partnership Act (UPA) and the Uniform Limited
Partnership Act (ULPA) as enacted by the States of Alabama,[8]

---

[8] Ala. Code secs. 10-9A-62, 10-8-49 (Michie 1991); Amesbury
Apartments, Ltd. v. Commissioner, 95 T.C. 227 (1990); see
discussion in Cambridge Research & Development Group v.
Commissioner, 97 T.C. 287, 298 (1991).

California,[9] Colorado,[10] Connecticut,[11] and Louisiana.[12]  In this case, the relevant State law in force at the time of the signing of the 1986 consent was also the UPA and ULPA, as enacted by the Commonwealth of Pennsylvania.[13]  The UPA statutes discussed above are all substantially identical to each other, and to the UPA (1914 Act) (U.L.A.) section 9.  The ULPA statutes discussed above are all substantially identical to each other, and to the Revised ULPA (1976) (U.L.A.) section 403.  Given the similarity of the statutes involved, we conclude that, under Pennsylvania law, the power to extend the section 6229(a) period of limitations is within the scope of partnership business, and the partnership

---

[9]  Cal. Corp. Code sec. 15509 (West 1991); Iowa Investors Baker v. Commissioner, T.C. Memo. 1992-490.  Iowa Investors Baker does not discuss Cal. Corp. Code sec. 15509 (West 1991), regarding the rights of general partners in a limited partnership.

[10]  Colo. Rev. Stat. secs. 7-60-109, 7-62-403 (1986); Georgetown Petroleum-Edith Forrest v. Commissioner, T.C. Memo. 1994-13.

[11]  Conn. Gen. Stat. Ann. secs. 34-17, 34-47 (West Supp. 1997); Cambridge Research & Development Group v. Commissioner, 97 T.C. 287, 298 (1991).

[12]  La. Civ. Code Ann. art. 2814 (West 1994); Medical & Business Facilities Ltd. v. Commissioner, T.C. Memo. 1994-38 (while not part of the UPA, article 2814 designed to bring Louisiana law into conformity with that of 48 States which have adopted the UPA), revd. on other grounds 60 F.3d 207 (5th Cir. 1995).

[13]  15 Pa. Cons. Stat. Ann. sec. 8533 (West 1995), derived from 59 Pa. Cons. Stat. sec. 523 (West 1987), and 15 Pa. Cons. Stat. Ann. sec. 8321 (West 1995), reenacting 59 Pa. Cons. Stat. sec. 321 (West 1987).

agreement in this case qualifies as a "writing" under section 6229(b)(1)(B).[14]

In sum, we hold that Mr. Farley as the general partner was "authorized by the partnership in writing" within the meaning of section 6229(b)(1)(B) to execute a consent to extend the section 6229(a) period of limitations and, consequently, that the 1986 consent executed by Mr. Farley was valid, and the 1996 notice was timely.  Based on this holding, we need not and do not reach respondent's other arguments based on the operation of Pennsylvania partnership law alone,[15] or equitable estoppel. Accordingly,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[14]  Petitioners argue that because the Form 2848 granting Mr. Farley power of attorney to represent the partnership was never filed, Mr. Farley had no authority to sign the consent. But a general partner needs no power of attorney to act on behalf of the partnership.  15 Pa. Cons. Stat. Ann. secs. 8321, 8533 (West 1995).

[15]  See <u>Cambridge Research & Development Group v. Commissioner</u>, 97 T.C. 287, 291 (1991) (where we expressly left that question open); see also <u>Medical & Business Facilities Ltd. v. Commissioner</u>, 60 F.3d 207, 211 (5th Cir. 1995) (holding that a statute is not a sufficient written authorization), revg. T.C. Memo. 1994-38.